The **PRINCE MANUFACTURING COMPANY**, Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,** Defendants.

No. 76 C 4708.

United States District Court, N. D. Illinois, E. D.

Oct. 6, 1977.

Richard W. Gillis, Chicago, Ill., Charles J. McCarthy, Washington, D. C., for plaintiff; Belnap, McCarthy, Spencer, Sweeney & Harkaway, Chicago, Ill., of counsel.

Mark L. Evans, Gen. Counsel, Charles H. White, Jr., Associate Gen. Counsel, Christine N. Kohl, Atty., I. C. C., Washington, D. C., Samuel K. Skinner, U. S. Atty., William A. Barnett, Jr., Asst. U. S. Atty., Chicago, Ill., David Orlikoff, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

### Motion and Cross-Motion for Summary Judgment

MAROVITZ, Senior District Judge.

Plaintiff Prince Manufacturing Company ("Prince") brought this action against the United States and the Interstate Commerce Commission (the "Commission") to review and set aside orders of the Commission entered in Docket No. 36102, *The Prince Manufacturing Company v. Norfolk and Western Railway Company, ("N&W")*. In that order, the Commission found certain demurrage charges levied against Prince neither unjust nor unreasonable and, accordingly, dismissed Prince's complaint seeking waiver of undercharges. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1336(a).

Pending before the Court are plaintiff's motion for summary judgment and defendants' joint cross-motion for summary judgment. Neither party claims a genuine issue of a material fact and both plaintiff and defendants seek a judgment in their favor as a matter of law. For the reasons set forth below, defendants' motion is denied and plaintiff's motion is granted, with modification of the relief sought.

## I.

The facts of this case are not disputed. On October 24, 1972, Prince ordered 8 carloads of iron ore from Cleveland Cliffs Iron Ore Company of Ishpeming, Michigan, for shipment to its Quincy, Illinois plant. On November 13, 1972, Prince ordered 8 additional cars. Both orders called for immediate shipment. The ore was available but was not shipped immediately because the originating carrier failed to make cars available. Four cars were shipped between November 7 and November 9 and unloaded upon arrival. The remaining 12 cars were shipped between November 27–30 and arrived between December 6–15.

During the first part of December, the weather in Illinois turned unusually cold, with temperatures dropping as low as 20 degrees below zero. When the cars arrived at Quincy, they were frozen solid. On December 11 and 12, the ore-laden cars were subjected to an ice storm which rendered Prince's shipment into 12 solid blocks.

The twelve cars were detained for a total of 1,158 days, an average of 96.5 days per car. Prince was precluded from using open fires to thaw the cars by the Environmental Protection Act of 1970 and the Regulations of the Illinois Environmental Protection Agency. Prince did succeed in unloading one car during a short thaw in early February, 1973, through the use of 40 person-hours of labor and 40 hours of crane time. Thereafter, the weather again turned cold. Prince's employees checked the remaining cars several times to determine if unloading could be accomplished by ordinary means. When the weather finally warmed, Prince began unloading the 11 remaining cars, which were released between March 15 and April 9, 1973.

Under the N&W tariff, over $32,000 of compensatory and penalty demurrage charges were assessed against Prince. On November 27, 1974, Prince filed a complaint with the Commission, alleging that the *penalty* portion of the demurrage charges was unreasonable, in violation of Section 1 of the Interstate Commerce Act, 49 U.S.C. § 1. Prince made no objection to the compensatory charges levied by N&W.

The Administrative Law Judge ("ALJ") who reviewed the evidence concluded, in an initial decision served June 19, 1975, that Prince had exercised due diligence in the handling and disposition of the 12 cars, and found the penalty charges to be unjust and unreasonable. Exceptions to the ALJ's decision were filed by the N&W, to which Prince did not reply.

Review Board Number 4 reversed the decision of the ALJ in a report and order served December 3, 1975. The Review Board found that Prince had not demonstrated that it made any "special efforts" to minimize the 1,158 detention days. Prince filed a petition for reconsideration, to which the N&W replied. The Commission, Appellate Division 2, denied the petition in an order served May 5, 1976, reinstating the report and order of Review Board Number 4 served December 3, 1975. On December 23, 1975, Prince brought this action for this Court's review of the Commission's decision.

The question before the Court is whether the Commission's finding that certain demurrage charges were just and reasonable is supported by substantial evidence, and is not arbitrary, capricious, or otherwise not in accordance with the law.

## II.

The threshold question, however, is whether the Report and Order of Review Board Number 4 is the Report and Order of the Commission. If it is not, plaintiff contends, then the Commission has neglected to include a statement of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record," a violation of 5 U.S.C. § 557(c). See also, 5 U.S.C. § 555(e).

■ It is clear, however, that the Commission, Appellate Division 2, explicitly adopted the decision of Review Board Number 4. The Commission's order reads in part:

It is further ordered, That the report and order entered in this proceeding on November 20, 1975, and served December 3, 1975, which pursuant to section 17(8) of the Interstate Commerce Act was stayed pending disposition of the petition [for reconsideration filed by Prince] be, and it is hereby, reinstated without any change in the requirements of said report and order, including the requirement that the complaint be, and it is hereby, dismissed[.]

We therefore agree with defendants that in determining whether the Commission's decision has a clearly articulated basis, this Court must focus on the decision of Review Board Number 4. We must also decide, however, whether that decision was in accord with the Commission's prior position on penalty charges.

## III.

■ As defendants point out, demurrage—the right of a carrier to assess charges for undue detention of its equipment—is a well established institution in the transportation industry. *Iversen v. United States,* 63 F.Supp. 1001, 1003–05 (D.D.C.1946), aff'd mem., 327 U.S. 767, 66 S.Ct. 825, 90 L.Ed. 998 (1946). Demurrage existed at common law, and continues to exist subject to regulation by the Commission. *Turner, Dennis & Lowry Lumber Co. v. Chicago, M. & St. P. Ry.,* 271 U.S. 259, 262, 46 S.Ct. 530, 70 L.Ed. 934 (1926). Demurrage serves two purposes. Its first function is to compensate the carrier for any loss incurred by the detention of its cars. Its second function, at issue in the case at bar, is to deter the shipper or consignee from reducing the efficiency of the rail system by needlessly detaining cars. *Id.* Thus, demurrage includes both compensatory and regulatory, or penalty, elements.

■ The penalty is imposed by virtue of a tariff filed by the carrier on its own initiative, which, as plaintiff asserts, provides a windfall to the carrier in the event of a car's detention. To avoid harsh results where the shipper or consignee is not at fault for detaining the car, the Commission has remitted the penalty charges upon a showing of due diligence by the shipper in

its efforts to free the car. In *Commerce & Industry Ass'n of N. Y., Inc. v. B. & O. R. Co.*, 281 I.C.C. 655, 661–3 (1951), the Commission stated:

> [I]t appears that in recent years the rule that demurrage and storage charges are properly accrued against the shipper where the detention occurred through no fault of the carrier, and even though the shipper also was not at fault, has been modified in instances where the shipper could not have avoided or abated the detention by the exercise of due diligence. In such instances the exaction of the penalty portion of the applicable charges, were determinable, has been found unreasonable, and reparation has been awarded to the basis of the actual expenses incurred by the carrier by reason of the detention.

We note that the N&W conceded that no penalty demurrage charges should be assessed against Prince if it exercised due diligence and was unable to unload its carloads of ore because of "conditions beyond its control." Initial Decision, *The Prince Manufacturing Co. v. Norfolk and Western Railway Co.*, Docket No. 36102 at 9.

Plaintiff contends that, while the ALJ followed the standard of "due" diligence, the Review Board mistakenly required Prince to show a "very high degree" of diligence, including a showing that Prince "is totally without fault" and had done "everything in its power to release equipment as soon as possible." Board Rep., p. 5. In support of its position that Prince did not exercise sufficient diligence to relieve it of penalty demurrage, the Commission relies on its decision in *Allied Chemical Corp. v. Erie Lackawanna R. Co.*, Docket No. 35602.

We agree with plaintiff that the Commission's reliance upon *Allied* is misplaced. In that case, coal was delivered in a frozen condition as a result of delay in transit. The issue was not whether the shipper had used due diligence in unloading the coal, but whether the delay was the fault of the carrier, for under the agreement between the carrier and shipper in *Allied*, only the fault of the carrier would have entitled the shipper to relief. In fact, the Initial Decision in *Allied* found that the shipper did exercise due diligence. *Id.*, at 8–9.

The Commission contends that it did not deviate from past norms, pointing out that the terms "high degree" and "due" diligence have been used by the Commission interchangeably. While this may be correct, we agree with plaintiff that here the Commission required a "very high degree" of diligence, which is not within the established norms.

The Commission has determined what constitutes due diligence on a case by case basis. In *Ormet Corp. v. Illinois Central R. R.*, 341 I.C.C. 647, 650–651 (1972) the Commission defined due diligence as:

> . . . *all* measures that may reasonably be required to relieve any existing emergency . . . including the exercise of *prudent foresight,* in the particular circumstances, . . . and *special efforts* to minimize detention must be made by the shipper. (Emphasis added).

While the record shows what Prince did during the four month detention of the cars, the Commission's decision relies on what the record did not show. The record did not show that Prince attempted to thaw the cars by an environmentally accepted method; to resell the ore to another party that had a method; to cancel the shipments when they first realized they would be delayed; or to continue attempts to thaw the other eleven cars after its first attempt proved successful during the early February thaw.

The core of the dispute between Prince and the Commission, therefore, lies in part with the Commission's application of afterthought rather than Prince's lack of forethought. It is true that the burden of proof is on the complainant in a complaint proceeding before an agency. *Atchison, T. & S. F. Ry. v. Wichita Board of Trade,* 412 U.S. 800, 812–813, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973). But we cannot assume that this burden encompasses coming forward with every conceivable method of releasing the cars. The situation is analogous to cases in which mitigation of damages is at issue:

A claim that damages should have been mitigated by the party entitled to damages is affirmative matter, the burden of proving which is on him who asserts it. The ruling under consideration was not erroneous, because the defendant did not sustain the burden of proving that the damages could have been reduced or mitigated by the exercise by the plaintiffs of reasonable care and diligence. *Standard Growers' Exch. v. Hooks,* 22 F.2d 599, 600 (5th Cir. 1927).

▮ Here, plaintiff established a *prima facie* case of due diligence. It would be procedurally unsound to expect plaintiff to explain why it did not pursue certain measures which were never proposed on the record. Further, since there is no evidence on the record that Prince did not pursue those measures, or that those measures were even possible, they may not be considered in determining whether Prince exercised due diligence in its disposition of the frozen cars.

▮ Defendant argues that "[g]iven the severe rail car shortage, a strong public policy favors strict imposition and collection of demurrage charges." Defendants' Memorandum at 10. See *Commerce and Industry Assn. of New York, Inc. v. Baltimore & O. R.R., supra,* at 651. While the Court does not doubt the soundness of this policy, it is clear that there is no record of a car shortage in this case. As the Supreme Court stated in *S.E.C. v. Chenery Corp.,* 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943): "The grounds upon which an administrative order must be judged are those upon which the record discloses that its [the agency's] action was based." We therefore find no reason why the Commission should deviate from the established standard of due diligence. Accordingly, we hold that the Commission erred in applying a standard of a very high degree of diligence and

in considering facts which were not in evidence before the ALJ.[1]

## IV.

Having determined that the Commission erred in its decision, the question of appropriate relief remains. Under 5 U.S.C. § 706(2), this Court may set aside the Commission's action if it is found to be (1) arbitrary and capricious; (2) an abuse of discretion; (3) otherwise not in accordance with the law; or (4) unsupported by substantial evidence.

▮ In order to determine whether the Commission's action was arbitrary and capricious, we must consider whether the Commission had made a clear error of judgment. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1975). For the reasons stated above, we find that the Commission deviated from the established standard of due diligence by misreading its decision in *Allied Chemical Corp. v. Erie Lackawanna R. Co., supra.* The Court also found error in the Commission's consideration of facts which were not before it as evidence. Since the Commission's decision relied on these facts, there was no rational connection between the actual facts found and the decision rendered. Accordingly, the Order must be set aside. *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962).

▮ Plaintiff asserts that this Court has the power to issue a directive to the Commission to remit the charges. While similar action has been taken in the past, see *Lake Carriers Ass'n v. United States,* 399 F.Supp. 386 (N.D.Ohio 1975), an order directing the Commission to grant plaintiff the relief requested is not appropriate in this case. The Commission's error was pri-

---

1. Plaintiff also raises the issue of whether the Commission should have considered the policy of other railroad lines in determining whether the penalty demurrage was unjust and unreasonable. Plaintiff attempted to introduce evidence that some railroad lines who are experienced in the handling of iron ore during the winter months relieve shippers of all demur-

rage charges during the months of November through March. The Commission found this evidence to be irrelevant to determine whether the N&W's demurrage was unreasonable. We agree. As the Commission accurately asserts, the N&W is required by law to assess charges according to its lawfully published tariff. 49 U.S.C. § 6(7).

marily one of applying an incorrect legal standard. Upon finding an error of law committed by an administrative agency, the function of this Court is to remand the cause to the agency for further consideration. *FPC v. Idaho Power Co.,* 344 U.S. 17, 20, 73 S.Ct. 85, 97 L.Ed. 15 (1952); *McBride v. Smith,* 405 F.2d 1057, 1059 (2d Cir. 1968) (Friendly, J.). Accordingly, the case is remanded to the Commission for further consideration in light of this Memorandum Opinion.

For the foregoing reasons, plaintiff's motion for summary judgment is granted, and defendants' joint cross-motion for summary judgment is denied.