187 Ill. App.3d 585 (1989)
543 N.E.2d 562
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 31, AFL-CIO, Petitioner,
v.
ILLINOIS STATE LABOR RELATIONS BOARD et al., Respondents.
No. 4-88-0751.
Illinois Appellate Court  Fourth District.
Opinion filed August 24, 1989.
*586 *587 *588 Gilbert Feldman, of Cornfield & Feldman, of Chicago, for petitioner.
Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for respondent Illinois State Labor Relations Board.
*589 Edward B. Miller and James A. Spizzo, both of Pope, Ballard, Shepard & Fowle, Ltd., of Chicago, for respondent County of Menard.
Order affirmed.
JUSTICE SPITZ delivered the opinion of the court:
The principal question in this case is whether an alleged refusal on the part of a public employer to engage in good-faith collective bargaining with a union which is the exclusive bargaining representative of a group of its employees is a defense to a decertification petition filed with respect to that union which, if proved, would render the petition untimely. Additional questions are whether a union's failure to serve an employer with a statement setting forth its position with respect to a decertification petition resulted in waiver of the union's right to a hearing on the petition and whether the purported failure of the Illinois State Labor Relations Board (ISLRB) to enforce a prior order requiring an employer to engage in good-faith collective bargaining may be asserted as a defense to a decertification petition.
On August 15, 1986, petitioner American Federation of State, County, and Municipal Employees (AFSCME) was certified by the ISLRB as the exclusive bargaining representative of a group of employees at the Sunny Acres Nursing Home in Petersburg. In an order entered January 14, 1987, the ISLRB found respondent County of Menard (County), which operates the Sunny Acres Nursing Home, guilty of an unfair labor practice in that on or about September 5, 1986, it had illegally refused to bargain with AFSCME. Therefore, the ISLRB ordered the County to bargain with AFSCME as the exclusive representative of the employees in the bargaining unit at the nursing home. Furthermore, the ISLRB held AFSCME's initial period of certification as exclusive bargaining representative of the employees included in the Sunny Acres bargaining unit was to commence on the date the County began to bargain in good faith with AFSCME. County of Menard, 3 Pub. Employee Rep. (Ill.) par. 2018, case No. S-CA-87-48 (Illinois State Labor Relations Board, Jan. 14, 1987).
 1 Thereafter, several months elapsed without any substantial progress in the negotiation of a union contract for the Sunny Acres employees. Eventually, the ISLRB's assistant administrator and compliance officer contacted AFSCME in order to obtain information regarding the County's compliance with the January 14, 1987, order. AFSCME's response to this request, which was dated June 10, 1987, read in part:
"It appears that [counsel for Menard County], is doing only surface bargaining.

*590 The decision of the Illinois State Labor Relations Board was issued in January of 1987. Negotiations did not begin until April. Nine sessions were scheduled in the months of April and May; only two of those sessions actually took place.
There have been numerous reasons why they were cancelled, but the one repeated most often is that the Nursing Home Administrator was uncooperative.
* * *
I am under the opinion that if [counsel for Menard County] does not call me this week, AFSCME has grounds for additional ULP [unfair labor practice] charges against Menard County."
("Surface bargaining" is one of a number of dilatory bargaining tactics which the National Labor Relations Board (NLRB) has determined constitute unfair labor practices under the National Labor Relations Act (NLRA) (29 U.S.C. § 151 et seq. (1982)), as amended. It is defined as actions by an employer which, while appearing to be good-faith collective bargaining, are in fact actions which amount to simply "going through the `motions'" of collective bargaining. (See 1 C. Morris, The Developing Labor Law 579-83 (2d ed. 1983); see also B.F. Diamond Construction Co. (1967), 163 N.L.R.B. 161, 173-79, 64 L.R.R.M. 1333 (trial examiner's decision, discussing "good-faith bargaining" principles).) On June 18, 1987, ISLRB's assistant administrator and compliance officer responded to this letter as follows:
"Thank you for your prompt response to our inquiry concerning compliance in the above referenced case.
Your June 10, 1987 letter states that following the Board's January 1987 order, the Employer may have engaged in surface bargaining. If you wish to file additional ULP charges against the County, as your letter indicates, we will investigate those charges accordingly."
AFSCME did not, however, file any unfair labor practice charges with regard to alleged surface bargaining on the part of the County.
On April 14, 1988, an employee at Sunny Acres filed a petition seeking decertification of AFSCME as exclusive bargaining representative of the employees in the bargaining unit at the nursing home. A hearing on the decertification petition was held on May 9, 1988.
In a recommended opinion issued June 8, 1988, the ISLRB's hearing officer held AFSCME's failure to file a timely position statement with respect to the decertification petition did not result in waiver of its right to a hearing on the petition, since the County *591 demonstrated no prejudice as a result of its not receiving such a statement. Furthermore, the hearing officer held the County waived its right to object to this omission on the part of AFSCME by not objecting thereto until after the hearing commenced.
On the merits, the hearing officer held the question of whether the County did not bargain in good faith for one year prior to the filing of the decertification petition could not be considered in the proceedings on the petition. The hearing officer stated consideration of this matter would be inconsistent with the policy of providing for an expeditious resolution of representation questions, and the proper procedure would have been for AFSCME to file unfair labor practice charges against the County based on its purported failure to bargain in good faith. Finally, the hearing officer held that, assuming arguendo, it was proper to consider the County's purported failure to bargain in good faith in the proceedings on the decertification petition, the County did not bargain in good faith with AFSCME as it was required to do by the ISLRB's January 14, 1987, order. County of Menard, 4 Pub. Employee Rep. (Ill.) par. 2033, case No. S-RD-88-16 (Illinois State Labor Relations Board, hearing officer, June 8, 1988).
On June 20, 1988, AFSCME excepted to the hearing officer's recommended opinion on the bases, inter alia, the hearing officer incorrectly ruled (1) the decertification petition was timely filed, and (2) AFSCME's remedy for the County's purported failure to bargain in good faith was to file an unfair labor practice charge. In a brief in support of its exceptions, AFSCME further argued the ISLRB deprived AFSCME of its constitutional rights by violating its alleged duty to enforce its January 14, 1987, order requiring the County to bargain with AFSCME and holding AFSCME should have filed unfair labor practice charges in lieu of the ISLRB seeking enforcement of that order.
In an opinion issued July 15, 1988, the ISLRB adopted the hearing officer's proposed decision in part. (County of Menard, 4 Pub. Employee Rep. (Ill.) par. 2033, case No. S-RD-88-16 (Illinois State Labor Relations Board, July 15, 1988).) The ISLRB indicated agreement with the hearing officer's determination AFSCME should not be allowed to raise unfair labor practice issues in the context of a representation case. The ISLRB stated such a practice would contravene the distinction between unfair labor practice proceedings, which are adversarial in nature, and representation proceedings, which are nonadversarial. The ISLRB observed the six-month limitation period on the alleged unfair labor practices (see Ill. Rev. Stat. 1987, ch. 48, *592 par. 1611(a)), which AFSCME asserted as a defense to the decertification petition, had expired and stated AFSCME should not be allowed to present charges based on those alleged unfair labor practices through the "back door" as a defense to a decertification petition.
The ISLRB also rejected AFSCME's argument the County's purported failure to bargain in good faith presented an issue as to whether the County had complied with the ISLRB's January 14, 1987, order. The ISLRB's reasons for the conclusion were: (1) the January 14, 1987, order dealt with an alleged refusal on the part of the County to bargain, not failure to bargain in good faith, and (2) AFSCME was aware that in order to protect its rights, it could file additional unfair labor practice charges.
Because of its finding AFSCME could not raise its unfair labor practice allegations as a defense to the decertification petition, the ISLRB found it unnecessary to consider the hearing officer's alternative finding the County did not bargain in good faith and specifically declined to adopt that finding. On the basis of its opinion, the ISLRB ordered a representation election in the previously defined bargaining unit at the Sunny Acres Nursing Home, in which employees were to be given the choices of continued representation by AFSCME and "No Representation."
At an election held September 2, 1987, the majority of the Sunny Acres Nursing Home employees who cast ballots voted for no representation, and AFSCME was decertified as bargaining representative of the members of the bargaining unit at the nursing home.
The County argues there is no need for this court to consider the merits of AFSCME's arguments on appeal. The County's basis for this contention is AFSCME waived its right to a hearing on the decertification petition in that it did not provide the County with a statement of its position with respect to the matters set forth in the petition. The County asserts it did not waive its objections to AFSCME's failure to provide it with a position statement by participating in the hearing on the decertification petition, because once the hearing officer decided to proceed with the hearing over its objections, the County had no choice but to participate in the hearing in order "to protect its position." At the time of the hearing, the administrative regulation governing position statements with respect to decertification petitions provided:
"All parties served with a representation or decertification petition shall file a response to the petition within 20 days of service. * * * The response shall set forth the positions of the *593 parties with respect to the matters asserted in the petition, including, but not limited to, the appropriateness of the bargaining unit and whether any employees sought by petitioner to be included in the unit are supervisory, managerial or confidential. If a party agrees to the appropriateness of the unit proposed in the petition, it shall so indicate. If a party disagrees with the unit proposed in the petition, it shall describe with particularity what it considers to be an appropriate unit, and shall include a description of the job titles and classifications of the employees to be included and of those to be excluded. A party that fails to file a timely response shall be deemed to have waived its right to a hearing, unless such failure is excused by the Board for good cause shown." (80 Ill. Adm. Code § 1210.100(a), at 9712 (1985).)
The County contends under the plain language of this rule, the hearing on the decertification petition was improperly held, and this court should therefore sustain the decertification order here at issue without reference to any matters which AFSCME raised before the ISLRB.
AFSCME notes it did file a position statement with respect to an earlier decertification petition involving the same bargaining unit as is involved in the present case, which petition was subsequently withdrawn. (County of Menard, Illinois State Labor Relations Board, case No. S-RD-88-14.) AFSCME maintains this previously filed position statement set forth the same arguments which AFSCME made in opposition to the second petition. AFSCME further points out the County made no objections with respect to AFSCME's failure to provide it with a position statement until after the start of the hearing on the second decertification petition. AFSCME argues since the County did not demonstrate any prejudice flowing from its failure to receive a position statement regarding the second decertification petition and advances no reasons for regarding the position statement requirement as jurisdictional, AFSCME should not be deemed to have waived its right to a hearing on the decertification petition here at issue.
 2 There are no indications AFSCME served the County with a position statement with respect to the second decertification petition prior to the start of the hearing on that petition. The fact AFSCME may have provided the County with a position statement with respect to a prior decertification petition did not relieve AFSCME of its obligation to provide the County with such a statement with regard to the present decertification petition, as there is no guarantee *594 a party to a decertification proceeding will not take positions on the issues different from those which it assumed in a previous but related decertification proceeding.
 3 However, section 1210.100(e) of the ISLRB's regulations provides the ISLRB shall investigate decertification petitions. This duty is not limited to those with respect to which position statements are filed. Moreover, if reasonable cause exists to believe a question concerning representation exists, the ISLRB shall set the matter for hearing before a hearing officer. (80 Ill. Adm. Code § 1210.100(c) (1985) (now see 80 Ill. Adm. Code § 1210.100(e) (Supp. Jan. 1, 1988)).) The ISLRB's rules further provide the ISLRB will review the hearing officer's recommendation upon request of a party or on its own motion. (80 Ill. Adm. Code § 1210.100(h) (1985) (now see 80 Ill. Admin. Code § 1210.100(k) (Supp. Jan. 1, 1988)).) Once again, the availability of this procedure is not limited to situations in which a position statement has been filed. Therefore, despite AFSCME's failure to file a position statement, the ISLRB could at least consider AFSCME's legal arguments directed to the hearing officer's decision, and we may do the same on review.
 4, 5 Resolution of the principal issue in this case  whether the ISLRB properly refused to consider AFSCME's allegations of the County's refusal to bargain in good faith as a defense to the decertification petition  requires a brief discussion of the legal principles applicable to calculation of the period for which a union may remain the exclusive bargaining representative of a group of employees once it is so designated. Under the NLRA a labor union which is certified as the exclusive bargaining representative of a group of employees must generally be recognized by the employer for a "reasonable" period, ordinarily one year. An employer is obligated to engage in good-faith collective bargaining with the exclusive employee bargaining representative for the one-year period, even if during that period it becomes apparent the representative no longer enjoys the support of the majority of employees in the bargaining unit. The principal reasons for this rule are (1) unions should be given ample time to carry out their mandates to engage in collective bargaining and should not be under pressure to either agree to a contract within a very short time or lose their status as exclusive employee bargaining representative; (2) employers should not enjoy the advantage of knowing if they use dilatory tactics in collective bargaining, their employees may repudiate their collective-bargaining representative in a relatively brief period of time, thereby relieving the employer of its duty to engage in collective bargaining; (3) employees should not be *595 permitted to repudiate their collective-bargaining agent at the last moment, after both sides have worked conscientiously toward a collective-bargaining agreement; and (4) in situations where unions are competing against each other, raiding and strife will be minimized if exclusive bargaining representatives are not subject to the hazard of short-term recall. (See 29 U.S.C. §§ 159(c)(3), (e)(2) (1982); Brooks v. NLRB (1954), 348 U.S. 96, 99 L.Ed. 125, 75 S.Ct. 176.) The one-year certification period is generally deemed to run from the date of a union's certification as exclusive bargaining representative rather than from the date of the election in which it was selected as exclusive bargaining representative. Celanese Corp. of America (1951), 95 N.L.R.B. 664, 28 L.R.R.M. 1362.
 6, 7 The Illinois Public Labor Relations Act (IPLRA) recognizes the "certification year" rule by providing the ISLRB shall not conduct an election in any bargaining unit or subdivision thereof within which a valid election has been held in the preceding 12-month period. (Ill. Rev. Stat. 1987, ch. 48, par. 1609(e); i.e., a statutory bar, see 1 C. Morris, The Developing Labor Law 352-54 (2d ed. 1983).) In accordance with NLRB precedent on the certification-year bar (see Mar-Jac Poultry Co. (1962), 136 N.L.R.B. 785, 49 L.R.R.M. 1854; see also 1 C. Morris, The Developing Labor Law 354-55 (2d ed. 1983); NLRB v. Best Products Co. (9th Cir.1985), 765 F.2d 903, 119 L.R.R.M. 3265), the ISLRB has held unfair labor practices which deprive a union of its right to good-faith collective bargaining for a significant amount of time may require an extension of the certification year for a period of time equal to the time period for which the union was denied its right to good-faith collective bargaining. See, e.g., County of Vermilion, 3 Pub. Employee Rep. (Ill.) par. 2004, at VIII-25, case No. S-CA-308 (Illinois State Labor Relations Board, Nov. 25, 1986).
AFSCME asserts the NLRB has never declined to adjudicate in a representation proceeding contentions a certified employee bargaining representative failed to receive the benefit of a full year of good-faith collective bargaining. AFSCME contends, to the contrary, the NLRB has in at least three representation cases determined whether a newly certified union has received the benefit of a full year of bargaining. AFSCME asserts in this case the ISLRB improperly held this question may only be considered in proceedings based on unfair labor practice charges.
AFSCME notes a recent amendment to the IPLRA made final orders in representation cases appealable. (Ill. Rev. Stat., 1988 Supp., ch. 48, par. 1609(i).) AFSCME argues this amendment obliterated *596 the purported distinction between formal unfair labor practice charge proceedings and less formal representation proceedings.
AFSCME further argues requiring the filing of unfair labor practice charges in order to redress an alleged failure on the part of an employer to engage in good-faith bargaining would frustrate the IPLRA's purpose of promoting procedures designed to displace labor strife. AFSCME's basis for this contention is that unfair labor practice proceedings can go on for several years. In the meantime, AFSCME argues, employee support for a union can dwindle as a result of there having been no improvements in wages or benefits during the period of the union's representation of the employees, and the employer might therefore benefit as a result of its failure to bargain in good faith. Also, AFSCME points out the ISLRB did not advise it, prior to its decision in this case, of a rule requiring unions to assert all lack of good-faith bargaining allegations through the medium of unfair labor practice charges.
The County argues the ISLRB correctly ruled AFSCME could not assert alleged unfair labor practices as a defense to a decertification petition. According to the County, this holding was proper because representation proceedings should expedite elections and should not be lengthy adversarial proceedings which delay elections. The County states although AFSCME had ample opportunity to file unfair labor practice charges in this case and was advised by the ISLRB it could and should file unfair labor practice charges if it wanted to raise bad-faith bargaining issues, it did not do so. The County also argues the three cases on which AFSCME mainly relies in support of its position as to this issue are not on point, because those cases dealt solely with measurement of the period of good-faith bargaining which had elapsed in view of undisputed facts.
The ISLRB reiterates the arguments of the County pertaining to this issue. Additionally, the ISLRB asserts that at the hearing on the decertification petition, the pertinent inquiry was whether bargaining had commenced, as opposed to whether the bargaining had proceeded in good faith. The ISLRB maintains since the first formal bargaining session was held on April 9, 1987, the decertification petition was timely filed on April 14, 1988. Also, the ISLRB argues the statement in AFSCME's June 10, 1987, letter to the ISLRB concerning alleged "surface bargaining" did not constitute an unfair labor practice charge. Finally, the ISLRB asserts AFSCME could have "blocked" (postponed) a representation election by filing unfair labor practice charges against the County and then requesting the charges serve as a "block" to the representation proceeding.
*597 In its reply brief, AFSCME contends the issue in this case is simply whether the County's purported failure to bargain in good faith is an election or a certification bar, and no unfair labor practice issue is involved.
 8 Under long-established policy, the NLRB does not adjudicate unfair labor practice charges in representation proceedings. (E.g., NLRB v. Lawrence Typographical Union No. 570 (10th Cir.1967), 376 F.2d 643; Mistletoe Express Service of Texas, Inc. (1984), 268 N.L.R.B. 1245, 115 L.R.R.M. 1153; E.W. Coslett & Sons (1959), 122 N.L.R.B. 961, 964 n. 7, 43 L.R.R.M. 1232.) None of the NLRB decisions upon which AFSCME mainly relies support a contrary principle.
The facts which formed the basis for the NLRB's decision in Chicago Health & Tennis Clubs, Inc. (1980), 251 N.L.R.B. 140, 105 L.R.R.M. 1009, were undisputed. There, the employer offered to bargain subject to conditions which were nonmandatory subjects of bargaining. The NLRB held the union acted within its rights in rejecting the offer to bargain, and as a result of its properly rejecting that offer, the union did not enjoy the benefit of a full year of good-faith collective bargaining prior to the filing of a decertification petition.
In Gebhardt-Vogel Tanning Co. (1965), 154 N.L.R.B 913, 60 L.R.R.M. 1037, the employer did not contest the union's allegation the union had not enjoyed the benefit of a full year of collective bargaining prior to the filing of a decertification petition. Instead, the employer contended (1) dismissal of the decertification petition on the ground the union had not enjoyed its right to a full year of collective bargaining would violate the employer's due process rights and statutory rights under the NLRA, and (2) the evidence relied upon for dismissal of the decertification petition was incompetent and immaterial. The NLRB rejected these contentions and held the decertification petition was not timely filed, since the union had not enjoyed the benefit of a full year of collective bargaining.
In Southern Manufacturing Co. (1963), 144 N.L.R.B. 784, 54 L.R.R.M. 1118, the sole question was whether, as a result of various periods of bargaining before and after a temporary plant shutdown, the union enjoyed the benefit of the one year of collective bargaining to which it was entitled. The NLRB held, on the basis of apparently undisputed facts, the union had enjoyed the benefit of one full year of bargaining prior to the filing of a petition requesting a representation election. In none of the above three cases was it necessary for the NLRB to adjudicate whether conduct on the part of the employer amounted to a failure to engage in good-faith collective bargaining or *598 any other unfair labor practice.
Franks Brothers Co. v. NLRB (1944), 321 U.S. 702, 88 L.Ed. 1020, 64 S.Ct. 817, from which AFSCME quotes extensively in its opening brief, was an unfair labor practice case rather than a representation case. There, the Court upheld a court of appeals decision which granted enforcement of an NLRB order which required an employer to engage in collective bargaining with a union, even though the union had lost its majority status.
 9, 10 Under NLRB procedures, a party which feels it has been the victim of unfair labor practices may prevent the holding of a representation election until unfair labor practice charges which it files are adjudicated. Indeed, unless the charging party requests the NLRB to proceed, the NLRB will decline to direct an election while unfair labor practice charges which affect the unit involved in the representation proceeding are pending (1 C. Morris, The Developing Labor Law 357 (2d ed. 1983)), i.e., the "blocking charge" rule. The blocking charge rule will be applied even where the charging party requests the NLRB to proceed if issues raised by the charge are such that they require resolution in the context of unfair labor practice proceedings  even through settlement and a notice posting period  prior to a representation election. (1 C. Morris, The Developing Labor Law 202-03 (2d ed. Supp. IV (1988)).) Contrary to the contentions of AFSCME, the use of the blocking mechanism is not necessarily limited to alleged unfair labor practices which might tend to render the holding of a fair and free election impossible. Rather, the NLRB has specifically held the pendency of refusal to bargain unfair labor practice charges provides a basis for application of the blocking mechanism to a decertification proceeding. Big Three Industries, Inc. (1973), 201 N.L.R.B. 197, 82 L.R.R.M. 1454.
 11-13 We conclude the ISLRB did not err in following the NLRB precedent applicable to situations of the type present in this case. The decisions of the ISLRB interpreting the legislation which it is charged with enforcing  the Illinois Public Relations Act  are entitled to deference on review. (Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n (1983), 95 Ill.2d 142, 447 N.E.2d 295; Village of Wheeling v. Illinois State Labor Relations Board (1988), 170 Ill. App.3d 934, 524 N.E.2d 958.) Although orders in representation proceedings are now appealable (Ill. Rev. Stat., 1988 Supp., ch. 48, par. 1609(i)), the ISLRB, in managing its case load, has the discretion to process representation questions separately from unfair labor practice charges. Parties who are the subject of unfair labor practice charges have a specific statutory right to file an answer to *599 the charges. Moreover, an unfair labor practice charge does not lie based on alleged conduct which occurred more than six months prior to service upon the charged party of a copy of the charge. (Ill. Rev. Stat. 1987, ch. 48, par. 1611(a).) When an alleged unfair labor practice is asserted as a defense to a decertification petition, neither of these requirements is applicable. The legislature has specifically authorized the ISLRB to proceed in this manner with respect to alleged unfair labor practices which may have an impact on representation proceedings. (Ill. Rev. Stat. 1987, ch. 48, par. 1609(a)(2).) The ISLRB acted well within its discretion in adopting procedures designed to insure parties to representation proceedings are not found guilty of conduct amounting to unfair labor practices without being afforded the benefit of these statutory requirements.
Although this procedure adopted by the ISLRB may delay those representation proceedings where it is requested an unfair labor practice charge "block" the proceeding, we cannot say the desirability of speedy resolution of representation issues outweighs the ISLRB's legitimate interest in separately adjudicating representation questions and unfair labor practice issues.
 14 Turning to the specific facts of this case, the conduct which AFSCME asserted as a defense to the decertification petition  refusal to bargain in good faith with the employees' exclusive representative  is by statute an unfair labor practice. (Ill. Rev. Stat. 1987, ch. 48, par. 1610(b)(4).) Moreover, the County denies it refused to bargain in good faith; thus, the ISLRB would have to adjudicate a question, whether an unfair labor practice occurred in the period following the ISLRB's January 14, 1987, order, in order to determine whether the County's alleged conduct is a defense to the decertification petition.
 15 The fact AFSCME was not specifically advised of the need for filing unfair labor practice charges with respect to the County's alleged failure to bargain in good faith does not require consideration of the alleged lack of good-faith bargaining on the part of the County in the present representation proceeding. As the ISLRB notes, AFSCME would have suffered no prejudice as a result of filing unfair labor practice charges with regard to this matter, but did not do so, even after the present decertification petition was filed. Furthermore, AFSCME was almost certainly aware the ISLRB has often followed NLRB precedent in interpreting the IPLRA. (See, e.g., McHenry County Sheriff, 3 Pub. Employee Rep. (Ill.) par. 2013, case No. S-RC-159 (Illinois State Labor Relations Board, Jan. 7, 1987); Township of Worth, 3 Pub. Employee Rep. (Ill.) par. 2019, case No. *600 S-CA-143 (Illinois State Labor Relations Board, Feb. 26, 1987).) Not being able to obtain an adjudication of whether the County engaged in surface bargaining is entirely a problem of AFSCME's own making.
Finally, AFSCME argues in failing to enforce its January 14, 1987, order requiring the County to engage in collective bargaining with AFSCME, the ISLRB violated section 11(f) of the IPLRA, which provides:
"Whenever it appears that any person has violated a final order of the Board issued pursuant to this Section, the Board must commence an action in the name of the People of the State of Illinois by petition, alleging the violation, attaching a copy of the order of the Board, and praying for the issuance of an order directing the person, his officers, agents, servants, successors, and assigns to comply with the order of the Board. The Board shall be represented in this action by the Attorney General in accordance with `An Act in regard to attorneys general and state's attorneys', approved March 26, 1874, as amended. The court may grant or refuse, in whole or in part, the relief sought, provided that the court may stay an order of the Board in accordance with the Administrative Review Law, pending disposition of the proceedings. The court may punish a violation of its order as in civil contempt." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 48, par. 1611(f).)
AFSCME notes by contrast, the relevant section of the National Labor Relations Act provides:
"The Board shall have power to petition any court of appeals of the United States * * * wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order * * *." (Emphasis added.) (29 U.S.C. § 160(e), at 899 (1982).)
AFSCME argues because of this difference in the statutory language concerning the enforcement powers of the ISLRB and NLRB, and the absence of a provision in the IPLRA giving entities other than the ISLRB the right to seek enforcement of ISLRB orders, the ISLRB is obligated to seek enforcement of its orders upon being informed of violations of them. AFSCME contends the procedures utilized by the ISLRB in this case, particularly the holding AFSCME should have filed an unfair labor practice charge with respect to the County's alleged failure to bargain in good faith, deprived AFSCME of its legal right to enforcement of the January 14, 1987, order and *601 thus amounted to an unconstitutional denial of due process of law. AFSCME further maintains the ISLRB's order in this case reduces its January 14, 1987, order to a superfluous nullity, for an order entered at the conclusion of an unfair labor practice proceeding, if favorable to AFSCME, would accord it the same right to good-faith bargaining as it was accorded by the January 14, 1987, order.
The County argues AFSCME's allegations that the County breached its duty of good-faith bargaining by engaging in "surface bargaining" could not have been addressed in a compliance proceeding based on the ISLRB's January 14, 1987, order, since no bargaining had taken place before that order was issued, proceedings which resulted in issuance of that order did not involve allegations of a breach of the County's duty to engage in good-faith bargaining. The County contends if AFSCME truly believed the ISLRB was obligated to seek enforcement of its January 14, 1987, order, it should have sought a mandamus order requiring the ISLRB to enforce that order. The County maintains since AFSCME did not seek a mandamus order, the issue of the ISLRB's duty to enforce its January 14, 1987, order was not properly before the ISLRB and is not properly before this court.
The ISLRB reiterates most of the County's arguments with respect to this issue. Additionally, the ISLRB contends the mere commencement of collective bargaining by the County amounted to compliance with the ISLRB's January 14, 1987, order.
In its reply brief, AFSCME asserts it did not seek a mandamus order against the ISLRB because it had no inkling the ISLRB would not honor its January 14, 1987, order.
 16, 17 We agree if AFSCME desired to compel the ISLRB to enforce its January 14, 1987, order, it should have sought a mandamus order after it became apparent the ISLRB was not going to seek enforcement of its January 14, 1987, order with respect to the County's alleged failure to bargain in good faith. Mandamus may be used to compel action on the part of a governmental body or official when the law imposes a duty on the official or governmental body to act in the manner requested. The purpose of a mandamus order is to compel the performance of a duty which one charged with that duty has failed to perform. (26 Ill. L. & Prac. Mandamus § 2, at 6-7 (1956).) Thus, if the ISLRB had an absolute duty under subsection 11(f) of the IPLRA (Ill. Rev. Stat. 1985, ch. 48, par. 1611(f)) to seek enforcement of its January 14, 1987, order upon receiving an allegation the County was not complying with that order, AFSCME's recourse for a violation of that duty was to seek a mandamus order. *602 Since AFSCME does not appeal from a denial of a request for a mandamus order, we may not consider whether the ISLRB improperly failed to enforce its January 14, 1987, order.
 18 AFSCME's further argument, that procedures employed by the ISLRB in this case violated its constitutional right to due process of law, is without merit. AFSCME had two readily available avenues for adjudication of its allegation the County improperly engaged in "surface bargaining"  it could have requested a mandamus order requiring the ISLRB to enforce its January 14, 1987, order, or it could have filed unfair labor practice charges, or both. AFSCME did neither. AFSCME can hardly be heard to complain its failure to pursue either of two readily available remedies violated its right to due process of law.
The sole case on which AFSCME relies in support of its due process argument  Logan v. Zimmerman Brush Co. (1982), 455 U.S. 422, 71 L.Ed.2d 265, 102 S.Ct. 1148  is factually inapposite to the present case. In Logan, the Illinois Fair Employment Practices Commission did not convene a fact finding conference within 120 days of the filing of a discrimination complaint, as it was at the relevant time required by statute to do. The Supreme Court held the extinguishment of the complainant's claim as a result of the failure of the Commission to hold a fact finding conference within 120 days of the filing of the complaint deprived the complainant of his claim in a random manner, in violation of his due process right to an opportunity for a meaningful hearing on his claim. In the present case, by contrast, AFSCME had ample opportunities for a meaningful hearing on its allegation the County did not engage in good-faith bargaining, but voluntarily chose to forego those opportunities.
For the foregoing reasons, the decision of the Illinois State Labor Relations Board is affirmed.
Affirmed.
McCULLOUGH, P.J., and KNECHT, J., concur.