FIRST DIVISION   

SEPTEMBER 2, 1997

No. 1-96-1235

COOK COUNTY STATE'S ATTORNEY, ) PETITION FOR REVIEW

) OF AN ORDER OF THE

Petitioner, ) ILLINOIS STATE LABOR

 ) RELATIONS BOARD.

v. )

)

ILLINOIS STATE LABOR RELATIONS BOARD and )

AMERICAN FEDERATION OF STATE, COUNTY, )

AND MUNICIPAL EMPLOYEES, COUNCIL 31, )

)

Respondents. )

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Petitioner Cook County State's Attorney's Office (State's Attorney, Office) appeals a final decision and order entered by respondent Illinois State Labor Relations Board (Board, ISLRB) finding that the State's Attorney engaged in an unfair labor practice as charged by respondent American Federa­tion of State, County, and Municipal Employees, Council 31 (AFSCME, Union).

The record on appeal indicates the following undisputed facts.  On June 29, 1995, AFSCME filed an unfair labor practice charge against the State's Attorney with the Board.  AFSCME charged that the Office fired Ms. Carol Hilan, who had been a Homicide Compensation Coordinator with the Victim-Witness Unit of the Office, effective April 21, 1995, due to her involvement in the organizing campaign of the Union.  AFSCME charged violations of  sections 10(a)(1) and (2) of the Illinois Public Labor Relations Act (5 ILCS 315/10(a)(1),(2) (1994))(Act).

On August 11, 1995, the Board served the State's Attorney with the charge by certified mail.  An accompanying letter states that Board Agent Hans DeKok would probably require the Office to submit a statement of position in the matter.  The Board's letter was received on August 17, 1995.  The Office mailed its appearance by Assistant State's Attorney (ASA) Maureen Hannon, dated August 23, 1995, to the Board.

A letter from ASA Hannon to DeKok dated September 27, 1995, marked "
VIA HAND DELIVERY
," presented the State's Attorney's statement of position.  The Office's position was that the personnel who fired Hilan -- Chris Orozco, Ken Kamps and Anne Harney -- had no knowledge of Hilan's union activity.  Affida­vits by Orozco, Kamps and Harney to this effect were attached to the Office's statement.  The Office also attached similar affidavits by Hilan's former supervisors.

The State's Attorney's position was that Hilan was fired due to substan­dard performance.  The Office submitted 3 prior written reprimands for leaving work without authorization, as well as a response written by Hilan.  The Office's position was that on February 28, 1995, a co-worker of Hilan was searching for a file on a crime victim's compensation application, when she found a number of unopened envelopes from other applicants in Hilan's desk.  The Office claimed that some of these envelopes were postmarked from October, November and December 1994, as well as January 1995.

On November 21, 1995, the Board mailed a "Complaint for Hearing" to the State's Attorney, charging an unfair labor practice by firing Hilan due to her union activities.  The complaint also stated that:

"RESPONDENT [Office] IS HEREBY NOTIFIED that pursuant to Section 1220.40(c) of the Board's Rules and Regulations [80 Ill. Adm. Code § 1220.40 (c) (1994)], it must file an answer to this Complaint and serve a copy thereof upon the Charging Party within 15 days of the service of the Complaint upon it.  Said Answer shall include an express admission, denial or explanation of each and every allegation of this Complaint.  Failure to specifically respond to an allegation shall be deemed an affirmative admission of the facts or conclusions alleged in the allegation.  Failure to timely file an answer shall be deemed an admission of all material facts or legal conclusions alleged, and a waiver of hearing.  The filing of any motions or other pleadings will not stay the time for filing an answer."

The complaint further states that a hearing on the matter would be conducted by Jacqueline Bachman and Administrative Law Judge (ALJ) of the Board.

On December 14, ALJ Bachman issued an "Order to Show Cause" why the State's Attorney should not be found in default.  The order states that the complaint was delivered to the State's Attorney by certified mail on Novem­ber 27, 1995; accordingly, the answer was due on December 12, 1995.  The order states that the State's Attorney did not file an answer until December 13, 1995.

The record contains a letter dated December 14, 1995, from ASA Sally Comin to ALJ Bachman.  The letter states that ASA Hannon, to whom the case was originally assigned, left the Office for private practice on November 30, 1995.  The case was assigned to ASA Comin on November 29, 1995.  The letter states that ASA Comin telephoned ALJ Bachman upon being assigned the case, and asserts that it was the Office's expectation that it would have 15 days from the telephone call to file the answer.  ASA Comin  wrote that she had needed time to review the case and supervisory approval to file the answer.  The letter asserts that the Charging Party was not prejudiced because the answer was filed less than 3 hours late.  The letter also states that the Office believed it had a meritorious defense to the complaint, based on its prior statement of position.

The Office also timely filed a formal response to the order to show cause.  The facts asserted in the response are similar to those recited in the Office's December 14, 1995, letter.  The response adds that when ASA Comin informed her supervisor, ASA John Murphy, that she had telephoned ALJ Bachman, ASA Murphy mistakenly assumed that ASA Comin had obtained an extension of time for filing the answer.  An affidavit by ASA Murphy states that his assumption was based on his past experience with the interaction of the Office with Board personnel.  ASA Murphy's affidavit also states that it was his policy to require his approval of all responsive pleadings by ASAs who are recent law school graduates, and this policy applied to ASA Comin.

The Office argued that it should not be found in default, based on section 1200.160 of the Board's Rules and Regulations (80 Ill. Adm. Code § 1200.160 (1994)), which provides that the Board may waive or suspend its rules under certain circumstances.  On January 3, 1996, ALJ Bachman issued a recommended decision and order denying the Office's request for a waiver.  Thus, the allegations of the Union's complaint were deemed admitted.  Accord­ingly, ALJ Bachman concluded that the State's Attorney illegally fired Hilan due to her Union-related activity.

The State's Attorney timely filed exceptions to the recommended decision and order.  However, on March 8, 1996, the Board issued a final decision and order accepting ALJ Bachman's recommended decision and order as its decision.  In a footnote, the Board agreed that a variance under section 1200.160 was not warranted because the State's Attorney had not shown that the 15 day period was unreasonable or unnecessarily burdensome in this case.  The State's Attorney now appeals.

The State's Attorney contends that the Board erred in refusing to grant a variance from the Board's Rules and Regulations.  Section 1220.40(c) of the Board's rules governs the filing of the respondent's answer to the unfair labor practice complaint:

"Whenever a complaint for hearing is issued, the respondent must file an answer within 15 days after service of the complaint.  

1) The answer shall include a specific admis­sion, denial or explanation of each allegation or issue of the complaint or, if the respondent is without knowledge thereof, it shall so state and such statement shall operate as a denial.  Admis­sions or denials may be made to all or part of an allegation but shall fairly meet the cir­cumstances of the allega­tion.  

2) The answer shall also include a specific, detailed state­ment of any affirmative defenses including, but not limited to, allega­tions that the violation occurred more than six months be­fore the charge was filed, that the Board lacks jurisdiction over the matter, or that the com­plaint fails to allege an unfair labor prac­tice.

3) Parties who fail to file timely answers shall be deemed to have admitted the material facts alleged in the complaint and to have waived their rights to a hearing.  The failure to an­swer any allegation shall be deemed an admission of that allegation."  80 Ill. Adm. Code § 1220.40(c) (1994).

Section 1200.160 of the Board's rules (80 Ill. Adm. Code § 1200.160 (1994)) provides that:

"The provisions of these rules may be waived or sus­pended by the Board when it finds that:

(a) The provision from which the variance is granted is not statutori­ly mandated;

(b) No party will be injured by the granting of the vari­ance; and

(c) The rule from which the variance is grant­ed would, in the particu­lar case, be un­reasonable or unnecessar­ily burden­some."

Section 1200.160 was raised in 
Metz v. Illinois State Labor Relations Bd.
, 231 Ill. App. 3d 1079, 596 N.E.2d 855 (1992), but was deemed waived because Metz failed to raise it before the Board.  
Metz
, 231 Ill. App. 3d at 1097, 596 N.E.2d at 866.  Thus, the case is one of first impression in this court.

This court has held that the Illinois Educational Labor Relations Board (IELRB) may, in its discretion, excuse the untimely filing of an answer.  
Board of Education of Thornton Township High School District No. 205 v. Illinois Educational Labor Relations Board
, 235 Ill. App. 3d 724, 731, 600 N.E.2d 1313, 1317 (1992)(
Thornton
).  It would seem logical that the Board possessed similar discretion in this case.

Generally, courts will not interfere with an agency's  discretion unless it is exercised in an arbitrary or capricious manner or its decision is against the manifest weight of the evidence.  
Murdy v. Edgar
, 103 Ill. 2d 384, 391, 469 N.E.2d 1085, 1088 (1984).  Agency action is arbitrary and capricious if it contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an explanation so implausible that it runs contrary to agency expertise.  
Greer v. Illinois Housing Development Authority
, 122 Ill. 2d 462, 505-06, 524 N.E.2d 561, 581 (1988).  An agency abuses its discretion when it imposes a sanction that is unduly harsh in light of mitigating circumstances.  
Sender v. Dept. of Professional Regulation
, 262 Ill. App. 3d 918, 922-23, 635 N.E.2d 849, 852 (1994).  In addition, an agency's refusal to exercise discretion in the erroneous belief that it has no discretion may be deemed an abuse of discretion.  See 
Moffitt v. Illinois Power Co.
, 248 Ill. App. 3d 752, 758, 618 N.E.2d 1305, 1309 (1993).

An agency's interpretation of its own rules and regulations and its long-standing interpretation of the provisions of its enabling statute are given deference, because they flow from the agency's expertise; however, an agency's resolution of questions of law are not binding on a reviewing court.  See 
T.M. Madden v. Dept. of Revenue
, 272 Ill. App. 3d 212, 215, 651 N.E.2d 218, 220 (1995); 
A. Finkl & Sons Co. v. Illinois Commerce Commission
, 250 Ill. App. 3d 317, 323, 620 N.E.2d 1141, 1145 (1993).  A court may defer to an agency's interpretation of law where it has been subject to judicial review.  
Walgreen Co. v. Selcke
, 230 Ill. App. 3d 442, 448, 595 N.E.2d 89, 93 (1992).  However, in a matter of first impression, the reviewing court will exercise 
de novo
  review.  
Carter Coal Co. v. Human Rights Commission
, 261 Ill. App. 3d 1, 6, 633 N.E.2d 202, 206 (1994).  Finally, a reviewing court may inquire into the method used by an agency to achieve the result at issue.  
Union Electric Co. v. Illinois Commerce Commission
, 77 Ill. 2d 364, 376, 396 N.E.2d 510, 516 (1979), 
citing
 
City of Alton v. Commerce Commission
, 19 Ill. 2d 76, 80, 165 N.E.2d 513, 516 (1960).  Given these standards, we turn to consider the application of section 1200.160 to this case.

A

The State's Attorney argues that the requirements of section 1220.40(c) are not statutorily mandated.  The Board concedes this in its brief.  We agree.

B

The State's Attorney next argues that no party would be injured by the granting of a variance.  During oral argument, the Board suggested that it might be prejudiced to the extent that a waiver would not further a public policy favoring the speedy resolution of labor disputes.

This court has recognized the need for the speedy resolution of 
educa­tional
 labor disputes in cases involving the IELRB.  
Board of Trustees of the University of Illinois v. Illinois Educational Labor Relations Board
, 274 Ill. App. 3d 145, 154, 653 N.E.2d 882, 887 (1995); 
Thornton
, 235 Ill. App. 3d at 729, 600 N.E.2d at 1316.  It must be remembered that the policy underlying the Illinois Educational Labor Relations Act:

"recognizes that substantial differences exist between educational employees and other public employees as a result of the uniqueness of the educational work cal­en­dar and educational work duties and the tradi­tional and historical patterns of collective bargain­ing between educational employers and education­al employ­ees and that such differenc­es demand statutory regula­tion of collec­tive bar­gaining between educa­tional employers and educational employees in a manner that recognizes these differences."  115 ILCS 5/1 (1992).

This case is not an educational labor dispute.  The unique work calendar of educational employees may require a degree of speed above that needed in a typical public employment dispute.

The Board cites no authority for the proposition that a similarly urgent need for speed exists here.  This court has affirmed the Board's adoption of procedures that 
delay
 Board proceedings, over the objection that such proce­dures hindered the speedy resolution of public employment disputes.  
E.g.
, 
American Federation of State County and Mun. Employees, Council 31, AFL-CIO v. Illinois State Labor Relations Bd., County of Menard
, 187 Ill. App. 3d 585, 599, 543 N.E.2d 562, 570 (1989).  Moreover,  the rules at issue must be read in accordance with the Act, which grants the State's Attorney the right to file an answer and appear at a hearing on the charges.
(footnote: 1)
The Board issued the complaint in this case almost 5 months after AFSCME filed its charge with the Board, which occurred approximately 2 months after Hilan was fired.  This record suggests that time was not of the essence for either the Union or the Board prior to the late filing of the answer.  The record  contains no indication of any injury to any party resulting from the delay in filing the answer that was not already suffered  during the prior months.

The Board claims that "in promulgating a bright-line fifteen-day rule, [it] relieved itself of having to make 
ad hoc
 exceptions to the rule."  However, the Board has granted relief from the late filing of an answer in the past.  
Illinois Nurses' Association (Durietz)
, 2 PERI ¶ 2003 (IL SLRB 1985).  The Board has acknowledged that there are cases where "the policies of the Act would be better served by a 
post hoc
 granting of an extension for responding to the complaint."  See 
County of Jefferson and Circuit Court of Jefferson County
, 7 PERI ¶ 2042, at X-203 n.4. (IL SLRB 1991).  Section 1200.160 expressly permits the Board to waive its rules; a contrary interpretation of the rule would be plainly erroneous.

The Board also states that "even if no prejudice would result from allowing a late answer to be filed, a default is still proper."  However, the issue is whether a waiver is warranted in this case, not whether a default is proper.  Section 1200.160 expressly includes the lack of prejudice to any party as a factor.  Ignoring this factor would be plainly erroneous. 

In sum, the record does not show that any party would have been injured by the granting of the variance.

C

Finally, the State's Attorney contends that application of section 1220.40(c) would, in this particular case, be unreasonable or unnecessarily burdensome.  The Board responds by citing a number of authorities for the proposition that this court and the Board have consistently held that the presence of a short delay and a meritorious defense does not prevent a default.  See 
Board of Trustees of the University of Illinois v. Illinois Educational Labor Relations Board
, 274 Ill. App. 3d 145, 653 N.E.2d 882 (1995); 
Metz
, 231 Ill. App. 3d at 1079, 596 N.E.2d at 855; 
Peoria Housing Authority
, 11 PERI ¶ 2033 (IL SLRB 1995); 
Chicago Housing Authority
, 10 PERI ¶ 3010 (IL SLRB 1994); 
County of Jefferson
, 7 PERI ¶ 2042.  None of these cases involved section 1200.160, except 
Metz
, where the argument was waived.

The Board did reject a section 1200.160 request in 
Illinois Secretary of State
, 11 PERI ¶ 2027 (IL SLRB 1995).  The respondent in that case negligently filed its answer 3 days late and apparently did not claim it had a meritorious defense.  The ALJ decided that the respondent failed "to demonstrate that the rule requiring timely filing of an answer was unreasonable or unnecessarily burdensome."  
Illinois Secretary of State
, 11 PERI ¶ 2027 at X-164.  The Board adopted the ALJ's recommended decision and order without discussing the section 1200.160 issue.  
Illinois Secretary of State
, 11 PERI ¶ 2027 at X-162.

Of course, section 1200.160(c) requires a finding "in the particular case," which suggests that other cases may not be determinative.  The rule prevents the Board from arbitrarily refusing to consider the facts of the particular case.  Moreover, 
Illinois Secretary of State
 is distinguishable from this case.  In this case, the delay in filing was closer to 3 hours than 3 days.  Unlike 
Illinois Secretary of State
, the Office has alleged a merito­rious defense in this case.  Indeed, the Office had already submitted a statement of position in this case, including affidavits and other evidence.

The Board and the Union note that the State's Attorney failed to request an extension of time for filing the answer under the Board's rules.  See 80 Ill. Adm. Code § 1200.30(d)(1) (1994).  This factor, which addresses the respondent's diligence in following the proceedings against it, is the only factor expressly noted in the Board's order.  In order to determine whether a lack of diligence by itself supports the Board's decision here, this court must inquire into the method employed by the Board in determining whether a variance is warranted under section 1200.160(c).  This is a question of first impression; the material facts are undisputed.

Although the parties use similar phrases, such as "good cause," "just reason" and "valid excuse," they ultimately offer differing interpretations of the "unreasonable or unnecessarily burdensome" standard.  The cases cited by the Office apply the standard for vacating a judgment under section 2-1301(e) of the Code of Civil Procedure (735 ILCS 5/2-1301(e) (1996)(Code), whereas the cases cited by the Board and the Union apply the standard for vacating a judgment under section 2-1401 of the Code (735 ILCS 5/2-1401 (1996)).

This court decided a similar issue with respect to the rules of the IELRB in 
Thornton
.  
Thornton
, 235 Ill. App. 3d at 727-31, 600 N.E.2d at 1315-17.  We have followed 
Thornton
 in a similar IELRB case.  
University of Illinois
, 274 Ill. App. 3d at 151-54, 653 N.E.2d at 885-87.  Thus, we turn to discuss 
Thornton
 and the question of whether it is applicable in this case. 

In 
Thornton
, the IELRB had adopted a regulation that provided that leave to file a late answer could be granted by the hearing officer for good cause shown, which would include facts showing a meritorious defense to the com­plaint and a reasonable excuse explaining the party's failure to file a timely answer.   
Thornton
, 235 Ill. App. 3d at 725-26, 600 N.E.2d at 1313 (citing 80 Ill. Adm. Code § 1120.30(d)(4) (1991)).  The IELRB had previously ruled that "good cause" was the same as the standard for vacating a judgment under section 2-1401 of the Code.  
Thornton
, 235 Ill. App. 3d at 727-28, 600 N.E.2d at 1315. 

On a respondent's appeal from a default judgment, the IELRB noted that the phrase "reasonable excuse" appeared in case law interpreting section 2-1401.  
Thornton
, 235 Ill. App. 3d at 728, 600 N.E.2d at 1315.  The respondent in 
Thornton
 argued for the application of the more lenient standard of section 2-1301(e).  
Thornton
, 235 Ill. App. 3d at 729, 600 N.E.2d at 1315.  This court stated that section 2-1301(e) was more analogous because the respondent sought relief at the time the default was entered.  
Thornton
, 235 Ill. App. 3d at 729, 600 N.E.2d at 1316.  However, the 
Thornton
 court held that the IELRB's interpretation of its regulation was not arbitrary or unreasonable.  
Thornton
, 235 Ill. App. 3d at 729, 600 N.E.2d at 1316.

Thornton
 and its progeny are distinguishable from this case in at least three respects.  First, as noted above, this case does not involve an educa­tional labor dispute.  We recognize  that substantial differences exist between educational employment disputes and other public employment disputes.  Moreover, in 
University of Illinois
, this court was concerned that departing from 
Thornton
 would encourage forum-shopping between the First and Fourth Districts of this court, because IELRB decisions are reviewable only in the districts where the IELRB maintains offices.  274 Ill. App. 3d at 153-54, 653 N.E.2d at 887.  In contrast, ISLRB decisions are reviewed in the district where the respondent resides or transacts business.  5 ILCS 315/11(e) (1996).  The Board conceded at oral argument that forum-shopping was not at issue here.

Second, in 
Thornton
, the IELRB had expressly adopted the 2-1401 standard for its rule.  In this case, the Board has  announced a policy of strict compliance with the 15 day rule, but has not identified any case expressly adopting the section 2-1401 standard in reference to section 1200.160.  Indeed, there is no indication here of what factors the Board considered in reaching its decision, aside from the Office's failure to request an extension of time.  The Board appears to be adopting the section 2-1401 standard for the first time in this appeal.  There is no long-standing construction of this rule by the Board in similar cases.  Nor has any Board decision under section 1200.160 been subject to judicial review.

Third, the IELRB rules differ from section 1200.160.  The rule at issue in 
Thornton
 expressly requires showing a "reasonable excuse," a phrase long associated with the section 2-1401 standard.  Section 1200.160(b) includes the lack of prejudice to any party, a factor associated with section 2-1301(e), not with section 2-1401.  
Thornton
, 235 Ill. App. 3d at 730, 600 N.E.2d at 1316.  Section 1200.160(c) refers to whether the rule from which a waiver is sought would be "unreasonable or unnecessarily burdensome" in a given case.  Section 2-1401 does not primarily focus on the reasonableness of the default.  In contrast, cases interpreting section 2-1301(e) state that the "overriding consideration" is whether it is 
reasonable
 to compel the parties to go to trial in a particular case.  
E.g.
, 
City of Chicago v. Central National Bank
, 134 Ill. App. 3d 22, 25, 479 N.E.2d 1040, 1043 (1985).

In sum, 
Thornton
 and its progeny do not compel this court to conclude that the Board did not err in refusing to grant a variance.  Rather, the analysis undertaken in 
Thornton
 suggests that a more lenient standard is appropriate, given the Board's rule and that respondent sought relief at the time the default was entered.

However, we are not required to reach this conclusion definitively at this time, because the Office meets the higher standard suggested by the Board and the Union.  As noted above, the cases cited by the Board and the Union apply the standards of section 2-1401 of the Code.  Thus, to be entitled to relief, the defaulted party must set forth specific factual allegations establishing: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim in the original action; and (3) due diligence in filing the petition for relief.  
Smith v. Airoom, Inc.
, 114 Ill. 2d 209, 220-21, 499 N.E.2d 1381, 1386 (1986).  In this case, the Office: set forth a meritorious defense; had timely notified the Board of this defense in a statement of position, including sworn affidavits; and sought relief immediately upon discovery of the late filing.

Moreover, assuming 
arguendo
 that the filing of the statement of position did not show diligence, the Office would still prevail.  The Board fails to recognize that diligence at the time of entry of the judgment is not the only consideration where defendant has a meritorious defense and actively pursues attempts to vacate a judgment order.  
E.g.
, 
Fiala v. Schulenberg
, 256 Ill. App. 3d 922, 628 N.E.2d 660 (1993)(and cases cited therein).
(footnote: 2)
The Board also has overlooked cases holding that the negligence of counsel may be excused where mitigating circumstances are present.  See, 
e.g.
, 
Leavens, Armiros & Ross, Ltd. v. English
, 203 Ill. App. 3d 16, 560 N.E.2d 1031 (1990).  The actual notice to the Board of the Office's position and defense should have been considered as a mitigating circumstance, even under a section 2-1401 standard.  Moreover, in deciding whether to vacate a default judgment involving public parties, the Board should have considered the interests of the community -- particularly the interest in ensuring that crime victims are properly served -- as well as the public interest of the Office in enforcing its employment rules as mitigating circumstances.  See 5 ILCS 315/2 (1996); 
Biscan v. Melrose Park Board of Fire and Police Commissioners
, 277 Ill. App. 3d 844, 848, 661 N.E.2d 424, 428 (1996); 
cf.
 
Collins v. Collins
, 14 Ill. 2d 178, 184, 151 N.E.2d 813, 816 (1958)(vacating decree after 30 days, despite wrongdoing of parties, where there was State interest in protection of marriage).  If the Board believed it had no discretion in this case, as suggested by the tone of its brief, it was in error.

In addition, there are factors in this case that warrant reversal under any rational interpretation of section 1200.160.  For example, we note that the Board's rules provide that a document is considered filed on the date it is postmarked or tendered to a delivery service.  80 Ill. Adm. Code § 1200.20(e) (1994).
(footnote: 3)  The Board has acknowledged that mailing through the U.S. postal service is "tendering to a delivery service."  See 
Illinois Secretary of State
, 11 PERI ¶ 2027 at X-163.  It is common knowledge that the capability of the postal service is such that there is no guarantee that a letter mailed will be received the next morning.  See 
Angelo v. Board of Review, Dept. of Labor
, 58 Ill. App. 3d 50, 52, 373 N.E.2d 858, 860 (1978).  

In this case, the answer was filed approximately 3 hours late.  Had the State's Attorney mailed its answer on December 12, 1995, it would have been deemed timely, but it almost undoubtedly would have been received by the Board later than it was actually received in this case.  Thus, the Board's refusal to waive section 1220.40(c) was simply arbitrary, particularly given the mitigating circumstances present in this case.

Moreover, the Board concluded that it would not be unreasonable or unnecessarily burdensome for the Office to answer within 15 days.  However, the 15 day period is only one facet of section 1220.40(c).  The Board's decision and order carries no indication that it considered whether it was reasonable in this case to apply section 1220.40(c)(3) -- the provision which deems the allegations of the compliant to be admitted and a hearing to be waived.  The Board apparently failed to consider this crucial aspect of the issue and imposed a sanction that was unduly harsh in light of the mitigating circumstances in this case.

For all of the aforementioned reasons, the decision of the Board is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BUCKLEY, J., concurs.

O'BRIEN, J., dissents.

JUSTICE O'BRIEN, dissenting:

The Board did not abuse its discretion in finding that the 15 day rule from which the waiver was sought was not "unreasonable or unnecessarily burdensome".

The Office has not demonstrated that the 15 day filing rule was "unrea­sonable or unnecessarily burdensome" in this particular case. The Office admits that it failed to file its answer on time because of negligence and inadvertence, nothing more.  In common parlance, the Office "dropped the ball".  There are no reported cases which hold that the negligence of counsel is 
prima facie
 evidence that rules based upon time limits, e.g., statutes of limitation, jury demands, notices of appeal, this 15 day answer rule are "unreasonable or unnecessarily burdensome".  It was not an abuse of discretion for the Board to deny the Office's request for a waiver upon these facts.

Additionally, the majority asserts that the status of the Office as a public entity entitles it to deferential consideration not afforded private counsel.  This assertion affords an office of hundreds of attorneys an exception not afforded a solo practitioner and is not reflective of our judicial tradition.

Accordingly, I respectfully dissent.

FOOTNOTES
1:  This is not to say that a respondent's right to file an answer is absolute and beyond regulation.  However, the State's Attorney makes no such claim in this case.  Rather, it merely seeks a variance in this particular case.  We express no opinion today regarding the validity of section 1220.40(c) in this case, as the State's Attorney did not directly raise the issue.

2:  The 
Thornton
 court cites some of these cases, but only to show that lack of prejudice to others was not at issue.  
Thornton
, 235 Ill. App. 3d at 730, 600 N.E.2d at 1316.  Also, in 
Thornton
, the issue of whether the respon­dent had a meritorious defense was not presented.  See 
Thornton
, 235 Ill. App. 3d at 727, 600 N.E.2d at 1314.

3:  A prior version of the rule provided that a document was deemed filed only when received by the Board.  
Metz
, 231 Ill. App. 3d at 1088, 596 N.E.2d at 860.