JOHN GUNIA, Plaintiff-Appellant, v. COOK COUNTY SHERIFF'S MERIT BOARD *et al.*, Defendants-Appellees.

First District (1st Division) No. 1—89—0215

Opinion filed March 25, 1991.

Kenneth N. Flaxman and Elizabeth Dale, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Joan S. Cherry, Frank J. Oles, and Steven B. Borkan, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

John Gunia (plaintiff) appeals from an order of the circuit court of Cook County, which affirmed the Cook County Sheriff's Merit Board's (the Board's) decision to terminate him from his position as a correctional officer with the Cook County Department of Corrections (the Department). Plaintiff contends that (1) the Board lost jurisdiction over the action when it failed to act promptly on the charges against him; (2) the hearing before the Board is void because the Board acted outside statutory authority; (3) the evidence at the administrative hearing was insufficient to establish cause to terminate him; and (4) the hearing officer's rulings on the burden of proof and the admissibility of evidence require a new hearing. We affirm.

On September 2, 1986, Richard Elrod, then sheriff of Cook County, filed a complaint against plaintiff with the Board. The complaint alleged that plaintiff had violated certain Department and Board rules and regulations regarding absences from duty and sought plaintiff's discharge from his employment as a correctional officer with the Department. Plaintiff was suspended from his employment pending the outcome of the Board hearing.

On the first scheduled hearing date, September 26, 1986, the matter was continued to October 27, 1986, so that the sheriff could file a written response to plaintiff's motion to dismiss the complaint and his motion to request the production of documents. On that date, the matter was continued to November 19, 1986, because the sheriff failed to comply with plaintiff's discovery request.

Due to the absence of the sheriff's attorney on November 19, the parties agreed to continue the matter to December 8, 1986. The sheriff filed a discovery request on December 8, and the hearing officer allowed plaintiff 10 days to respond to the request. The hearing officer set a trial date of January 12, 1987. Both parties answered ready for a hearing on January 12, 1987, but the hearing was continued apparently due to administrative reasons.

The hearing commenced on January 26, 1987, before Officer James Garbutt. On plaintiff's request, the hearing was continued to February 23, 1987. During the hearing, Elizabeth Hill, an assistant supervisor of personnel for the Department, testified to the authenticity of plaintiff's attendance records. The records indicated the following.

During the period August 1985 through August 1986, plaintiff was scheduled on 265 days to work the 4 p.m. to midnight shift. The schedule provided that plaintiff would work four consecutive work days, followed by two nonworking days. At the beginning of August 1985, plaintiff had accumulated 27 sick days.

Plaintiff was voluntarily absent from work a total of 62 days, including two compensatory days, four personal days, 14 vacation days, 39 medical days, a sick day for which his pay was docked, and an unexplained absence. Plaintiff was suspended for five days for disciplinary reasons and sent home another day for being out of uniform. In addition, 31 of the 39 paid medical absences, as well as the unpaid sick day and the compensatory days, followed scheduled nonworking days. Plaintiff also took sick days on the holidays of Christmas day, New Year's Eve, and New Year's day.

Hill admitted on cross-examination that the general orders of the Department provide that sick leave may be accumulated not to exceed 175 working days at a rate of 12 working days per year and that an employee need not provide any medical certification as proof of illness unless he takes five consecutive sick days.

Plaintiff testified that, in October 1985, he began to see a doctor at the Anchor HMO in Chicago Ridge, Illinois, because he was "under a lot of stress on the job and feeling nauseous, insomnia, headaches, and things of that nature." On November 30, 1985, he began taking

medications and twice thereafter changed medications due to reactions to the medication. His sick-day absences were the result of the medicine reactions and the worsening of his symptoms.

Plaintiff signed a medical release form on August 29, 1986, for the Department to obtain medical records from the Anchor HMO for the period in question. Although the hearing officer did not allow plaintiff to give medical-related testimony as to his visits to the Anchor HMO, the officer allowed plaintiff's counsel to submit a list of the dates that plaintiff contacted the Anchor HMO from its medical records subpoenaed by plaintiff. The chart prepared by plaintiff's counsel and submitted after the hearing listed 13 dates from October 30, 1985, to August 28, 1986, on which plaintiff either visited or telephoned the Anchor HMO.

Plaintiff admitted on cross-examination that, since March 1983, he has filed numerous charges against the Department with various administrative agencies and that he feels he has been subjected to unfair treatment by the Department.

On April 27, 1987, the Board entered an order terminating plaintiff's employment with the Department. The Board subsequently withdrew its order upon plaintiff's motion to reconsider the order and entered an order on July 27, 1987, terminating plaintiff's employment.

On administrative review in the circuit court, plaintiff raised numerous issues for review, including the fact that the hearing officer, who had left his employment with the Board before the issuance of its decision, had not signed the termination order. The circuit court remanded the case to the Board "for either a complete rehearing by an individual hearing officer who will make the decision and write the decision or to have the hearing officer or officers who heard this case to make a decision." The court further noted that it was not reaching the other issues raised in plaintiff's brief on administrative review at that time.

On remand, the former hearing officer who had heard plaintiff's case prepared a "recommended order and decision," recommending that plaintiff be terminated from his employment. The record does not contain any subsequent order entered by the Board. In plaintiff's "motion to renew his petition for administrative review and for ruling," filed on December 15, 1988, plaintiff states: "The Merit Board has not formally adopted [the hearing officer's recommendation], but on December 15, 1988 plaintiff's undersigned counsel was advised that the Merit Board intended to rest on its July 27, 1987 order terminating plaintiff because that decision was supported by the [hearing officer's] recommendation."

On December 27, 1988, the circuit court entered a written order denying plaintiff's "motion to renew" and further ordered that the "decision of the Merit Board terminating petitioner and entered on July 27, 1987 [be] sustained."

Before addressing the four delineated contentions in plaintiff's appellate brief, we note that plaintiff has further suggested that the circuit court improperly refused to consider issues raised by him after it had reserved its ruling on these issues pending remandment to the administrative agency. While the record indicates that the court stated that it was not reaching these issues at the time it remanded the case, the record does not demonstrate that the court failed to consider these issues, fully briefed and argued by the parties, before it rendered its final decision on December 27, 1988.

Plaintiff's first contention on appeal is that the over four-month delay before his hearing on the charges deprived the Board of jurisdiction over the matter because it violated the policy of the State civil service laws to afford every public employee the right to a speedy disciplinary hearing. In response, the Board maintains that no statutory requirement exists that plaintiff be given a hearing within a specified time and that plaintiff's constitutional right to a prompt hearing was not violated since much of the delay is attributable to plaintiff.

Addressing first the statutory issue raised by the parties, plaintiff concedes that no statutory provision expressly requires that he be given a prompt disciplinary hearing. Section 12 of the "Act in relation to the Cook County Sheriff's Merit Board" (the Act) provides for a Board hearing before a Department employee is removed or suspended, but it is silent as to time frame in which the hearing must be held. (Ill. Rev. Stat. 1987, ch. 125, par. 62.) Rather, plaintiff argues that we should determine from the Personnel Code (Ill. Rev. Stat. 1987, ch. 127, par. 63b111) that the policy underlying this State's civil service statutes is to give merit employees a disciplinary hearing within 30 days from the date of the charges and then read such a requirement into section 12 of the Act.

Plaintiff bases his theory on *Wagner v. Kramer* (1985), 108 Ill. 2d 413, 484 N.E.2d 1073. In *Wagner*, the supreme court affirmed the appellate court's order reversing the sheriff's merit commission's order refusing to review a five-day suspension summarily issued against the plaintiff by the sheriff's board of inquiry, even though the statutory provision did not provide for review of suspensions of less than 30 days. In concluding that the statute must be construed to provide some method of review of disciplinary suspensions imposed by the

sheriff, the court relied on its reasoning in *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 322 N.E.2d 793.

The *Kropel* court, in reaching its conclusion that a similar statutory provision had to be construed "to provide for some manner of review," observed (1) that the public policy of the State, as ascertained from an examination of public employee disciplinary statutes *in pari materia*, had been to provide for some form of review, and (2) the provision authorizing summary suspension would not survive a constitutional attack on due process grounds without providing for some manner of review. *Kropel*, 60 Ill. 2d at 26, 322 N.E.2d at 798.

■■ Contrary to plaintiff's broad interpretation of the above cases, we interpret *Wagner* and *Kropel* as reading into a statute a requirement recognized as the public policy of the State so that the statute could withstand the constitutional due process mandate that a public employee is entitled to an adequate hearing before he is deprived of his property interest in continued employment. (See *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487.) In both *Wagner* and *Kropel*, the statute provided only for summary disciplinary action and therefore *on its face* violated the employee's due process rights. Here, in contrast, the statute does not foreclose the employee's due process right to a prompt hearing. Thus, it would be inappropriate in our judicial function under these circumstances to read into the statute a requirement not provided for by the legislature. This is especially true with regard to the 30-day time requirement urged by plaintiff here, the specifics of which cannot be said to be necessary for constitutional due process (see *Loudermill*, 470 U.S. at 547, 84 L. Ed. 2d at 507, 105 S. Ct. at 1496).

This is not to say that plaintiff's due process rights in the case at bar may not have been violated by an unreasonable delay. The appropriate inquiry, however, is not a construction of the statute to provide a time limit for conducting a hearing, but an evaluation of whether the statute as applied in the instant circumstances violated plaintiff's individual due process rights.

■■ The due process clause does not require a specific time frame in which to provide a hearing, but requires a hearing "at a meaningful time." (*Loudermill*, 470 U.S. at 547, 84 L. Ed. 2d at 507, 105 S. Ct. at 1496, citing *Armstrong v. Manzo* (1965), 380 U.S. 545, 552, 14 L. Ed. 2d 62, 66, 85 S. Ct. 1187, 1191.) In arguing that plaintiff's constitutional right to a prompt hearing has not been violated, the Board asserts that plaintiff made no demand for trial and acquiesced to and benefitted from the delay.

■ The record reveals that 147 days elapsed before the hearing on the charges. A 23-day delay occurred because the sheriff failed to comply with discovery, and a 35-day delay resulted when the sheriff filed a late discovery request. As to the remaining days, administrative delays account for 38 of the days, 31 days are attributable to plaintiff's discovery request, and plaintiff expressly agreed to a 20-day continuance due to the absence of the sheriff's attorney. Thus, a significant portion of the delay may be attributed to plaintiff based upon his actions. Plaintiff acquiesced to the remaining delay by failing to object to the continuances or at any time demand trial. (See *Brown v. Sexner* (1980), 85 Ill. App. 3d 139, 405 N.E.2d 1082.) Under these circumstances, plaintiff has not demonstrated that his due process rights have been violated by the delay before his hearing on the charges.

■ Plaintiff also directs us to the delay occasioned during the hearing and preceding the final decision. The record reveals that a 28-day delay resulted during the hearing because plaintiff requested a continuance. After the hearing, 65 days elapsed before issuance of the first written opinion. This court has previously held, on the issue of a prompt disposition once a hearing is initiated, that there must be " 'proof of the normal time necessary to dispose of a similar proceeding or of facts tending to show a dilatory attitude on the part of the [agency] or its staff.' " (*Brown*, 85 Ill. App. 3d at 151, 405 N.E.2d at 1091, quoting *Wright v. Califano* (7th Cir. 1978), 587 F. 2d 345, 352.) As no such proof exists here, we find no due process violation by the delay in this adjudication.

Plaintiff next contends that the hearing is void because it was conducted before a single Board member and because the Board delegated its decision-making authority to a former Board member.

■ The authority of an administrative agency to adopt rules and regulations is defined by the statute creating it; in the exercise of this authority, an administrative body cannot extend or alter the operation of a statute. (*Popejoy v. Zagel* (1983), 115 Ill. App. 3d 9, 11, 449 N.E.2d 1373, 1374-75.) Thus, a rule or regulation which conflicts with the statute will be held invalid. *Popejoy*, 115 Ill. App. 3d at 12, 449 N.E.2d at 1375.

The Board rule allowing hearings before a single Board member is invalid, plaintiff asserts, because it conflicts with provisions in the enabling statute.

■ Section 6 of the Act provides that the "Board shall formulate, adopt, and put into effect rules, regulations and procedures for its operation and the transaction of its business." (Ill. Rev. Stat. 1987, ch.

125, par. 56.) Pursuant to this section, the Board enacted rules allowing "any member" of the Board to hear the case and receive evidence thereto, after which "the Board shall review the evidence, may review, at its discretion, the hearing transcripts and then the Board shall make its findings and determine its order." Rules and Regulations of the Cook County Sheriff's Merit Board, Art. IX, §§C(1), D(1).

The statutory provision with which plaintiff claims these rules directly conflict is section 12 of the Act, which provides, in pertinent part:

> "[N]o employee in the County Department of Corrections shall be removed, demoted or suspended except for cause, upon written charges filed with the Board by the Sheriff and a hearing before the Board thereon upon not less than 10 days' notice at a place to be designated by the chairman thereof. *** Each member of the Board shall have the power to administer oaths or affirmations. If the charges against an accused deputy sheriff are established by a preponderance of evidence, the Board shall make a finding of guilty and order either removal, demotion, suspension for a period of not more than 180 days, or such other disciplinary punishment as may be prescribed by the rules and regulations of the *** offense merits." (Ill. Rev. Stat. 1987, ch. 125, par. 62.)

Plaintiff argues that the Board rule permitting hearings before single Board members conflicts with this statutory provision because the provision specifically mandates that cases against employees be heard by "the Board," defined under the Act as "consisting of 3 members" (Ill. Rev. Stat. 1987, ch. 125, par. 52). The Board, however, points out that the statute does not contain language providing that the entire Board *hear the evidence.* The Board maintains that the rules satisfy statutory mandates because the rules provide that the Board render the ultimate decision. The Board further maintains that the statutory language conferring on each member of the Board the power to administer oaths in fact contemplates that a single member may conduct a hearing.

In support of his contention, plaintiff misplaces his reliance on *The Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 357 N.E.2d 785, and *Jones v. Department of Human Rights* (1987), 162 Ill. App. 3d 702, 515 N.E.2d 1255, where courts held agency actions void because they conflicted with statutory provisions governing hearing procedures. The courts in those cases found fault with the number of board members involved *in the ultimate decision,* in contravention to explicit statutory language requiring *the particular decision* be

made by the "entire Board" (*Homefinders*, 65 Ill. 2d at 127, 357 N.E.2d at 785) or the "full [c]ommission" (*Jones*, 162 Ill. App. 3d at 706, 515 N.E.2d at 1255). In contrast, no conflict exists here because the statute does not contain language specifying that the "entire" Board hear the evidence, and the rules require the Board to review the evidence and render the ultimate decision.

■ Plaintiff is mistaken in his second assertion that the Board delegated its decision-making authority to a former Board member. When the circuit court remanded the case to the Board, the Board referred the case to the former member merely to enter a *proposed* order of his findings on the evidence he heard as a Board member. Plaintiff himself admitted in his motion to renew his petition for administrative review that he was advised after the former member signed the proposed order that "the [Board] intended to rest on its July 27, 1987 order terminating plaintiff because that decision was supported by the [hearing officer's] recommendation." It is evident, therefore, that the Board did not delegate its decision-making authority to the former Board member.

■ Addressing now plaintiff's contention that the evidence does not establish "cause" to terminate him, we initially note that some confusion exists over the precise rule violations found by the Board to warrant discharge. In his initial brief filed with this court, plaintiff concedes that the Board terminated him based upon the Department rule prohibiting "excessive, prolonged or consistent pattern of unexcused absences from duty" (Rules and Regulations of the Cook County Department of Corrections, General Order 4.1, §III, par. 6), and his argument addresses this finding. In his reply brief, however, plaintiff responds that the Board cannot rely on the "excessive absence[s]" in its argument in support of the decision to terminate him because the Board's July 27, 1987, order was based only upon the Board rule prohibiting "absen[ces] without leave or appropriate permission" (Rules and Regulations of the Cook County Sheriff's Merit Board, Art. VIII, §B, par. 13).

Although the Board's July 27, 1987, order refers only to the Board rule violation, the Board's April 27, 1987, order terminating plaintiff and the hearing officer's October 13, 1988 "recommended order and decision" state that plaintiff violated rules of conduct of *both* the Board and the Department. The Board's inaction after the hearing officer's October 13, 1988, proposed order setting forth both rule violations indicates that the Board incorporated those findings in its July 27, 1987, order. Moreover, because plaintiff did not raise this ar-

gument in his initial brief, and in fact based his argument on the finding, he has waived this issue on review. See 134 Ill. 2d Rule 341(e)(7).

Plaintiff contends that the Board's decision to terminate him is against the manifest weight of the evidence because he complied with the general orders of the Department which allow an employee to use accumulated sick days for illness (175 sick days, at a rate of 12 sick days per year) without medical certification as proof of illness, unless the employee takes five consecutive sick days. The record indicates that plaintiff had accumulated 27 sick days as of August 1985 and 12 additional days for the period August 1985 to August 1986, and the hearing officer found that plaintiff had been absent from duty on 36 days during this period. The record also shows no five consecutive absences to require medical certification.

In response, the Board initially directs us to *Holliday v. Civil Service Comm'n* (1984), 121 Ill. App. 3d 763, 460 N.E.2d 358, and *Kammann v. City of Chicago* (1906), 222 Ill. 63, 78 N.E. 16, for the proposition that no specific rule prohibiting the conduct is required to find cause for discharge. This proposition does not aid us here since plaintiff is not objecting to the absence of a rule governing his conduct. Rather, the crux of plaintiff's contention is that the Board's factual findings that plaintiff violated certain Department and Board rules are not supported by the evidence since these findings directly conflict with the Department's general orders regarding sick leave.

■ Although the general rules allow an employee to accumulate sick days and use them in a given year, implicit in these rules is that the days be taken for illness. The fact that the Department procedures do not require an employee to provide medical certification as proof of illness does not shield an employee from the consequences of abuses of sick-day allowances. The hearing officer here examined plaintiff's attendance record and found that of plaintiff's 36 absences, 21 were taken in conjunction with regular days off, 16 on Saturdays or Sundays and three on holidays. The officer also listened to plaintiff's substantially uncorroborated testimony regarding the illnesses he suffered on these dates. We cannot conclude, based upon this evidence, that the hearing officer's findings that plaintiff had an excessive pattern of unexcused absence and was absent without appropriate permission are against the manifest weight of the evidence.

■ Having found that the agency's factual findings are supported by the evidence, our next inquiry is to determine if the findings provide a sufficient basis for the agency's conclusion that cause for discharge is warranted. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105, 449 N.E.2d 115, 117; *Bultas v.*

*Board of Fire & Police Commissioners* (1988), 171 Ill. App. 3d 189, 193, 524 N.E.2d 1172, 1174.) The agency's decision to discharge may not be reversed unless it is found to be unreasonable, arbitrary or unrelated to the requirements of service. (*Walsh*, 96 Ill. 2d at 105, 449 N.E.2d at 117.) In reaching this determination, courts are assisted by the general guideline that the conduct must constitute some substantial shortcoming which renders the continued employment a detriment to the discipline and efficiency of the service. *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360, 189 N.E.2d 275, 277; *Onesto v. Police Board* (1980), 92 Ill. App. 3d 183, 187, 416 N.E.2d 13, 16.

■■ As argued by plaintiff, the detriment of plaintiff's continued employment to the discipline and efficiency of the Department is obvious. Plaintiff's excessive pattern of unexcused absences indicates a lack of responsibility and willingness to perform his duties as a correctional officer. Such conduct threatens the penal institution's ability to staff itself and seriously jeopardizes its security. We conclude, therefore, that the sanction of discharge was not unreasonable, arbitrary or unrelated to the needs of the Department.

Finally, we turn to plaintiff's contention that procedural errors at the administrative hearing require that he be granted a new hearing. Plaintiff initially argues that the hearing officer improperly placed the burden of proof on plaintiff to prove that his use of sick days was justified, where the burden properly rested on the sheriff to establish the charges against him by a preponderance of the evidence (Ill. Rev. Stat. 1987, ch. 125, par. 62; *Prince Manufacturing Co. v. United States* (N.D. Ill. 1977), 437 F. Supp. 1041, 1045).

■■ Plaintiff first refers to the hearing officer's remarks to plaintiff's counsel at the January 12, 1987, hearing during a discussion regarding the type of evidence to be submitted at the upcoming trial: "[T]he excuse for the absence can be proven by appropriate evidence and not by somebody purporting to have a medical complaint and doing it by submitting a piece of paper from God knows who." It is fairly evident that the hearing officer's comments referred to the evidentiary rules which would be applicable to plaintiff's defense, as opposed to burden of proof.

Plaintiff also directs us to the hearing officer's remarks on plaintiff's motion to dismiss at the close of the evidence at the January 23, 1987, trial. In her oral motion, plaintiff's counsel asserted that the sheriff had to prove that plaintiff was not sick in order to prevail. She argued that she did not believe that the sheriff had met that burden. Plaintiff maintains that the hearing officer's denial of his motion on

that basis indicates that the court put the burden of proof on plaintiff to disprove the violations. The explanation offered by the hearing officer, however, demonstrates that the denial was based upon the sufficiency of the sheriff's evidence:

> "The Sheriff alleged *** [a] consistent pattern of unexcused absences from duty. *** The pattern, abusing these days in conjunction with days off so as to develop a pattern of taking days following either or preceding two days off from his regular day off, giving him three to four days over a period of time is a pattern. *** I see a number of instances where the days were taken *** which were obviously days off, weekends *** [that] show absences due to a claim of illness in conjunction with two days they would have coming off, and that creates a question of whether that is a pattern. So I am going to deny your motion. I think they have raised—at least submitted the facts to show what they can argue to be a pattern."

Thus, the hearing officer properly denied plaintiff's motion on the basis that the sheriff satisfied his burden through the introduction of the attendance card.

▬ The other procedural error claimed by plaintiff is the hearing officer's ruling allowing the admission of testimony that plaintiff had filed administrative charges against the Department with administrative agencies. Plaintiff asserts that this evidence is irrelevant to the administrative charges against him. We believe this evidence is relevant to show plaintiff's state of mind regarding his employment, as well as his motivation for engaging in a pattern of unexcused absences.

For the reasons stated above, the circuit court's order affirming the Board's decision to terminate plaintiff from his position as a correctional officer is affirmed.

Affirmed.

MANNING, P.J., and CAMPBELL, J., concur.