BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Petitioner-Appellant, v. ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

First District (1st Division)   No. 1—93—3775

Opinion filed July 17, 1995.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (R. Theodore Clark, Jr., and Thomas J. Piskorski, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jerald S. Post, Assistant Attorney General, of counsel), for respondent Illinois Educational Labor Relations Board.

Dowd & Bloch, of Chicago (Robert E. Bloch, J. Peter Dowd, and Linda Wyetzner, of counsel), for respondent University Police Association.

JUSTICE BUCKLEY delivered the opinion of the court:

The Board of Trustees of the University of Illinois (the University) appeals the order of the Illinois Educational Labor Relations Board (the Board) which found that pursuant to Board regulations, the University did not have "good cause" to answer the Board's complaint three days late. On appeal the University argues: (1) the complaint was not properly served; (2) the Board erred in concluding that the University did not show "good cause" for filing its answer three days late; (3) the Board's application of "good cause" is arbitrary and unreasonable; and (4) the Board erred in awarding relief without a hearing.

The facts in this case are undisputed. On June 29, 1992, the University Police Association (the Union) filed an unfair labor practice charge with the Board against the University. The Union alleged that on or about January 1, 1992, the University began to make deductions from employees' paychecks for the cost of health insurance premiums without prior notice to the Union and without affording the Union the opportunity to negotiate and bargain. The Union also claimed that the University engaged in discriminatory practices in order to discourage membership in an employee organization. The Union further alleged that the University failed and refused to bargain collectively and that it had been engaging in unfair labor practices within the meaning of the Illinois Educational Labor Relations Act (the Act) (115 ILCS 5/1 *et seq.* (West 1992)). After an investigation, the Board's executive director issued a complaint on December 17, 1992, naming the Union as the complainant and the University as the respondent.

The complaint was sent by certified mail and received by counsel for the University on December 21, 1992. On that same date, a copy of the complaint was sent by first class mail to: "University of Illinois at Chicago, 2388 University Hall Box 4348, Chicago, Illinois 60608." Section 1120.30(d) of the Board's regulations requires that an answer be filed no later than 15 days after service of a complaint. (80 Ill. Adm. Code § 1120.30(d) (1994).) However, the University filed its

answer to the complaint on January 8, 1993, or 18 days after the University's attorney was served with the complaint. On January 11, 1993, the Union filed a "Motion for Entry of Order that Allegations of Complaint be Deemed Admitted," which is the equivalent to a motion for a default judgment. On January 12, 1993, the Board issued an order requesting the University to show cause to support a denial of the Union's motion. In response, the University explained that its attorney had misrecorded the date the complaint had been served as December 24, 1992, and this caused the University to file its answer three days late. The hearing officer concluded that the University did not have "good cause" to file a late answer and on April 27, 1993, issued a "Recommended Decision and Order" granting the Union's motion. On September 23, 1993, the Board affirmed the hearing officer's decision and this appeal followed.

## I

The University's first contention is that the complaint was not properly served "upon the party complained of," as required by the Act. The issue is whether the Board's regulation, providing for service on a party's representative, is valid. The complaint was sent by certified mail to the attorney who appeared for the University during the Board's precomplaint investigation of the Union's unfair labor practice charge. The University maintains that the Board's regulation, which provides for service on the party's representative, conflicts with the plain language of the Act.

■ The statute creating an administrative agency defines the authority of the agency to adopt rules and regulations and the agency cannot extend or alter the operation of the statute by its regulations. (*Gunia v. Cook County Sheriff's Merit Board* (1991), 211 Ill. App. 3d 761, 769, 570 N.E.2d 653, 658.) Therefore, a rule or regulation which conflicts with the statute is invalid. (*Gunia*, 211 Ill. App. 3d at 769, 570 N.E.2d at 658.) The party challenging the validity of a regulation bears the burden of proving its invalidity. (*Begg v. Board of Fire & Police Commissioners* (1984), 99 Ill. 2d 324, 331-32, 459 N.E.2d 925, 928.) An administrative regulation carries the same presumption of validity as a statute, and so long as the regulation furthers the purpose of the statute and is not arbitrary, unreasonable or capricious, it will be sustained. *Coronet Insurance Co. v. Washburn* (1990), 201 Ill. App. 3d 633, 637, 558 N.E.2d 1307, 1310; *Kankakeeland Community Action Program, Inc. v. Department of Commerce & Community Affairs* (1990), 197 Ill. App. 3d 1067, 1074, 557 N.E.2d 277, 281.

■ The purpose of the Illinois Educational Labor Relations Act is

"to promote orderly and constructive relationships between all educational employees and their employers." (115 ILCS 5/1 (West 1992).) The legislature has determined that the best way to accomplish this policy is to, among other things, establish "procedures to provide for the protection of the rights of the educational employee, the educational employer and the public." 115 ILCS 5/1 (West 1992).

Section 15 of the Act states in pertinent part:

"A charge of unfair labor practice may be filed with the Board by an employer, an individual or a labor organization. If the Board after investigation finds that the charge states an issue of law or fact, it shall issue and cause to be served *upon the party complained of* a complaint which fully states the charges \*\*\*." (Emphasis added.) (115 ILCS 5/15 (West 1992).)

Section 5(g) of the Act provides: "The Board may promulgate rules and regulations which allow parties in proceedings before the Board to be represented by counsel or any other person knowledgeable in the matters under consideration." (115 ILCS 5/5(g) (West 1992).) Finally, section 1100.20 of the Board's regulations provides in relevant part:

"c) The Board will serve petitions, intervening claims and unfair labor practice charges on the appropriate parties by either personal service, registered or certified mail, or by leaving a copy at the principal office or place of business of the person required to be served.

d) All documents, except those listed in subsection (c), above, will be served on the appropriate parties by the party propounding the document, either by the methods listed in subsection (c), or by first class mail, or overnight delivery service. *When a party is represented in a proceeding before the Board, service shall be on the party's representative.*" (Emphasis added.) 80 Ill. Adm. Code §§ 1100.20(c), (d) (1994).

The Board found that the complaint was properly served in accordance with Board regulations by sending the complaint by certified mail to the attorney representing the University. In addition, according to the Board, this complaint was not within one of the categories covered by section 1100.20(c), and, therefore, service on the University by first class mail was sufficient. We need not address whether service was satisfied by mailing the complaint to the University because we find service was properly made on the University's attorney.

■ Effecting service on a party by serving that party's attorney of record has been recognized repeatedly as the accepted practice in both administrative and judicial proceedings. See *Foley v. Metropoli-*

*tan Sanitary District of Greater Chicago* (1991), 213 Ill. App. 3d 344, 351, 572 N.E.2d 978 (and cases cited therein) (stating "[g]enerally, notice to an attorney is notice to the client and knowledge of an attorney is knowledge of, or imputed to, the client notwithstanding whether the attorney has actually communicated such knowledge to the client"); *White v. Department of Employment Security* (1994), 264 Ill. App. 3d 851, 637 N.E.2d 647; *Board of Education of St. Charles Community Unit School District, No. 303 v. Adelman* (1985), 137 Ill. App. 3d 965, 485 N.E.2d 584; *Massoud v. Board of Education of Valley View Community District No. 365-U* (1981), 97 Ill. App. 3d 65, 69, 422 N.E.2d 236 (stating "[c]ertainly, an attorney of record before an administrative agency is appointed to receive service for his client, barring an express statement to the contrary in his entry of appearance").

■ Furthermore, the Board's regulation at issue furthers the purpose of the Act. The University has failed to show how this statute is arbitrary or unreasonable. This regulation does not conflict with the Act; rather, it details the procedure for service "upon the party" and allows the parties to be represented by counsel in matters before the Board. This particular regulation was designed to prevent a party from getting stuck in the mire of administrative procedure. By providing for service on a party's representative, the Board has diminished the possibility, in most cases, that a filing deadline will be missed. The fact that the regulation may have disadvantaged the University in this case is not a sufficient basis for finding that the regulation conflicts with the Act. Service on the University's attorney was entirely proper and effective in this case.

## II

■ We next address the issue of whether the University showed "good cause" for filing its answer three days late. Section 1120.30(d)(4) of the Board's regulations provides that leave to file a late answer may be granted by the hearing officer "for good cause shown." (80 Ill. Adm. Code § 1120.30(d)(4) (1994).) The regulation further states: "Good cause will include: a written statement by the party of: ultimate facts showing a meritorious defense to the complaint; and either a reasonable excuse explaining the party's failure to file a timely answer, or that the party was prevented from filing a timely answer by: fraud, act or concealment of the opposing party; accident; excusable mistake; or lack of notice, lack of jurisdiction or other grounds traditionally relied upon for equitable relief from judgments." (80 Ill. Adm. Code § 1120.30(d)(4) (1994).) The Board has held that the "good cause" standard was "modeled after the procedure for

vacating a default judgment under section 2—1401 of the Illinois Civil Practice Act." *City Colleges of Chicago No. 508*, 7 Pub. Employee Rep. (Ill.) par. 1018, No. 91—CA—0005—C, at IX—84 (IELRB December 31, 1990 (Hearing Officer)), *adopted*, 7 Pub. Employee Rep. (Ill.) par. 1055, No. 91—CA—0005—C (IELRB April 17, 1991).

In *Board of Education of Thornton Township High School District No. 205 v. Illinois Educational Labor Relations Board* (1992), 235 Ill. App. 3d 724, 600 N.E.2d 1313, the fourth district held that the Board's interpretation of the "good cause" regulation was not arbitrary or unreasonable and applied the section 2—1401 standard. (*Thornton*, 235 Ill. App. 3d at 729, 600 N.E.2d at 1316.) In *Thornton*, the Board issued a complaint naming the school district as the respondent. The attorney for the school district filed an answer to the complaint 63 days late. The attorney had forgotten to answer because he was experiencing a heavy work load and a family crisis at the time. The Board granted the union's motion for a default judgment, finding that the attorney's heavy work load and family crisis did not constitute "good cause." On appeal, the court held that the school district did not have a reasonable excuse for filing a late answer and affirmed the decision of the Board. The court concluded:

> "Finally, we note that when passing upon requests for relief under section 2—1401 of the Code *** courts have been held to have some discretion. [Citations.] Logically, the IELRB was similarly possessed of some discretion in ruling here. Particularly in view of the expressed policy of speedy resolution of educational labor relations disputes [citation] we find no abuse of discretion occurred." *Thornton*, 235 Ill. App. 3d at 731, 600 N.E.2d at 1317.

The Illinois Supreme Court has held that a motion for relief from judgment under section 2—1401 is not intended to relieve a party from the consequences of its own mistake or negligence. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 222, 499 N.E.2d 1381, 1387; *Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 467, 236 N.E.2d 719, 720.) A party seeking relief under section 2—1401 is held responsible for its attorney's action or failure to act. *Kaput v. Hoey* (1988), 124 Ill. 2d 370, 383, 530 N.E.2d 230, 236; *Gruss v. Beverley* (1990), 201 Ill. App. 3d 502, 508, 559 N.E.2d 135, 139.

The cases cited by the University to support its position are distinguishable. For example, the University cites *Genesis & Sons, Ltd. v. Theodosopoulos* (1991), 223 Ill. App. 3d 276, 585 N.E.2d 188, in which the court reversed a circuit court denial of vacatur where there were allegations of unconscionable conduct on the part of the plaintiff's attorney, such as a failure to comply with a notification requirement. However, the court noted:

"By our decision in this case, we are not relaxing our rule that breakdowns in law office procedures are not excusable negligence. (*Carroll Service Co. v. Schneider* (1986), 144 Ill. App. 3d 38, 41.) Ordinarily, a defense counsel's failure properly to docket a trial date, without more, would be insufficient to be awarded relief under section 2—1401." *Genesis & Sons*, 223 Ill. App. 3d at 282, 585 N.E.2d at 193.

Another case cited by the University to support its position is *Robinson v. Commonwealth Edison Co.* (1992), 238 Ill. App. 3d 436, 606 N.E.2d 615, *appeal denied* (1993), 149 Ill. 2d 660, 612 N.E.2d 523. In *Robinson* the court affirmed the trial court's order granting section 2—1401 relief. The plaintiff in that case did not receive notice of the order dismissing his case for want of prosecution. Subsequent to the issuance of the dismissal order, the plaintiff received service of the appearance of other defendants to the action. Plaintiff's attorney was a sole practitioner and had not practiced in Cook County for some time. There was evidence that the circuit court clerk's office did not have the attorney's correct registration number and notices were being sent to an attorney uninvolved in the action. The fact that other defendants appeared after the default led the attorney to believe that the action was still pending. In addition, a fire at the attorney's office forced him to move to temporary quarters and disrupted his practice for nine months. The court found that these circumstances provided a sufficient basis for granting section 2—1401 relief. *Robinson*, 238 Ill. App. 3d at 444, 606 N.E.2d at 620.

■ The University has not alleged any reason, other than the failure to properly record the relevant date, for its failure to file a timely answer. No extenuating circumstances, such as those found in the cases cited by the University, prevented the University from filing its answer on time. The case precedent does not support the University's broad interpretation of the relief available under section 2—1401. Thus we find that the Board did not abuse its discretion by finding that the University did not have "good cause" to file a late answer.

### III

■ The University contends that the Board's application of the section 2—1401 standard in determining "good cause" is arbitrary and unreasonable. "It is well established that the interpretation given by an administrative agency to its own rules and regulations is entitled to respectful consideration and will not be overruled unless plainly erroneous." (*John Sexton Contractors Co. v. Pollution Control Board* (1990), 201 Ill. App. 3d 415, 424, 558 N.E.2d 1222, 1228, citing *Heifner v. Board of Education of Morris Community High School*

*District No. 101* (1975), 32 Ill. App. 3d 83, 87, 335 N.E.2d 600, 603.) A Board's construction of its regulations is preferred and entitled to deference where it is reasonable. (*Granite City Division of National Steel Co. v. Pollution Control Board* (1993), 155 Ill. 2d 149, 176, 613 N.E.2d 719, 731.) Courts apply the same rules of construction used in construing statutes when interpreting the meaning of an agency rule. *White v. Department of Employment Security* (1994), 264 Ill. App. 3d 851, 854, 637 N.E.2d 647, 649.

The University argues that the Board's application of "good cause" is too stringent and instead it should apply the more lenient standard under section 2—1301 of the Illinois Civil Practice Act, which governs motions to vacate default judgments filed within 30 days of entry. (735 ILCS 5/2—1301 (West 1992).) This same argument was rejected by the court in *Thornton*. (*Thornton*, 235 Ill. App. 3d at 729, 600 N.E.2d at 1316.) The *Thornton* court noted that section 2—1301 is more analogous to situations where a party requests that the Board find "good cause" for filing a late answer within 30 days of judgment. However, the court also recognized the policy of speedy determination of educational labor disputes and concluded that the Board was not being arbitrary or unreasonable by adopting the section 2—1401 standard. *Thornton*, 235 Ill. App. 3d at 729, 600 N.E.2d at 1316.

In support of its interpretation of the regulation, the Board directs this court to the similarities between the language of the regulation and the language of cases concerning section 72 of the Civil Practice Act, which was the precursor to section 2—1401. For example, in *Stoller v. Holdren* (1964), 47 Ill. App. 2d 81, 197 N.E.2d 492, the court stated:

> "To vacate a valid judgment after 30 days from its entry under [section] 72 of the Civil Practice Act defendants must show reasonable excuse for failure to defend within the appropriate time or that they were prevented from so doing by the fraud, act or concealment of the opposing party, accident, excusable mistake or one or more of the grounds traditionally relied upon for equitable relief from judgments. The defendant must also state ultimate facts showing a meritorious defense." (*Stoller v. Holdren* (1964), 47 Ill. App. 2d 81, 82-83, 197 N.E.2d 492, 493.)

This similarity was also acknowledged by the court in *Thornton*. *Thornton*, 235 Ill. App. 3d at 728, 600 N.E.2d at 1315.

Finally, we are mindful of the fact that appellate review of a Board decision may be sought only in a judicial district in which the Board maintains an office. (115 ILCS 5/16(a) (West Supp. 1993).) The Board maintains offices in Chicago and Springfield. Therefore, only

the First and Fourth districts of the Appellate Court may review Board decisions. Our research failed to reveal any case other than *Thornton* regarding this issue. A difference in precedent would lead to undesirable confusion and forum shopping. Thus, we follow the fourth district's reasoning in *Thornton* and give deference to the Board's interpretation of its regulation.

We recognize that the Board's rule may seem harsh in some circumstances. However, the harshness of the rule is tempered by the fact that it furthers the purpose of the Act. Given the need to provide for speedy resolution of educational labor disputes, the Board's adoption of the section 2—1401 standard is not arbitrary or unreasonable.

## IV

The final issue is whether the Board erred in awarding relief without a hearing. The Board ordered the University to cease and desist from:

"(a) interfering, restraining or coercing employees in the exercise of rights guaranteed under the Act.

(b) Discriminating in regard to hire, tenure of employment or any term or condition of employment to discourage membership in the University Police Association.

(c) Refusing to bargain collectively in good faith with the University Police Association."

The Board also ordered the University to take the following affirmative actions to effectuate the purposes of the Act:

"(a) Restore the *status quo ante*.

(b) Following restoration of the *status quo ante*, bargain in good faith with the Association over any changes in payments for health insurance premiums by unit employees.

(c) Post on bulletin boards or other places at the University of Illinois at Chicago reserved for notices to Police Officer I's copies of an appropriate Notice to Employees ***.

(d) Notify the Executive Director in writing within thirty (30) calendar days after receipt of this Recommended Decision and Order of the steps taken to comply with it."

Under section 1120.30(d)(3) of the Board regulations, a failure to respond to any particular allegation of the complaint is deemed to be an admission of that particular allegation. (80 Ill. Adm. Code § 1120.30(d)(3) (1994).) The complaint specifically warned the University that a failure to timely answer would be deemed an admission of all allegations in the complaint. Section 15 of the Act provides that, upon finding an unfair labor practice, the Board "is empowered to issue an order requiring the party charged to stop the unfair practice, and may take additional affirmative action, including requir-

ing the party to make reports from time to time showing the extent to which he or she has complied with the order." 115 ILCS 5/15 (West 1992).

The University claims that it is entitled to a hearing on the question of appropriate relief and cites *Stotlar Drug Co. v. Marlow* (1993), 239 Ill. App. 3d 726, 607 N.E.2d 346, in support of its argument. *Stotlar Drug* involved an action for an unliquidated damage claim. The court ruled that even a defaulted defendant has the right to be heard on the matter of damages in such a case. (*Stotlar Drug*, 239 Ill. App. 3d at 729, 607 N.E.2d at 349.) This is not such a case. The Board ordered the University to restore the status quo *ante*. Although this order may involve a refund of the deductions made from the employees' paychecks, it certainly cannot be characterized as an award of unliquidated damages.

The relief ordered by the Board was entirely consistent with the allegations in the complaint and did not "exceed or substantially differ from" the relief requested. (*Charles v. Gore* (1993), 248 Ill. App. 3d 441, 449, 618 N.E.2d 554, 559.) Based on the University's admissions, the Board found that the University had committed unfair labor practices and was empowered by the Act to issue such an order.

Accordingly, for the foregoing reasons, the order of the Illinois Educational Labor Relations Board is affirmed.

Affirmed.

WOLFSON and BRADEN, JJ., concur.